MARVIN, Judge.
After being convicted by a jury and receiving concurrent hard labor sentences for the crimes of attempted aggravated rape (20 years, LRS 14:27 & 42), aggravated crime against nature (15 years, § 14:89.1), attempted second degree murder (20 years, §§ 14:27 & 14:30.1), and aggravated kidnapping, (life, without parole, which was ordered to be served consecutively to the other sentences, § 14:44), DeWayne E. Arnold appeals, contending that his aggravated kidnapping conviction is not supported *939 by the evidence and that his sentences are excessive. The correct spelling of defendant’s first name (DeWayne or Dwayne) is unknown, since both are used interchangeably throughout the record.
Defendant abducted his female victim at knifepoint, attempted vaginal rape, forced her to perform fellatio, and then stabbed the victim in the neck while throwing her out of the parked vehicle in which he abducted her.
Notwithstanding defendant’s brutality, we must conclude that on this record the State did not meet its burden of proving the “ransom” element of aggravated kidnapping, that is, that the defendant forced the victim to submit to his sexual demands in order to gain her release.
On the other hand, the record supports the convictions and the sentences for aggravated crime against nature and the attempted crimes of aggravated' rape and second degree murder. In that respect, we affirm.
We reverse the conviction for aggravated kidnapping and remand with instructions that defendant be found guilty of simple kidnapping and resentenced for this crime.
BURDEN OF PROOF
The critical questions by the prosecutor about the aggravated kidnapping leave much to be desired. The victim was not questioned by the State about the ransom element that is vital to a conviction of aggravated kidnapping. We emphasize and reproduce the critical testimony:
Questions by the prosecutor:
Q. Okay. Were you threatened during this attack [apparently referring to either or both the sexual attack and the final struggle, that caused the cuts and scratches for which the victim was examined in the hospital] ■ ...?
A. He told me if I didn’t do what he said, that he would use the knife.
Q. Okay. Did he say why he was kidnapping you?
A. When we were driving, I asked him why he had kidnapped me and he said that he was taking me to this guy who sold drugs, that he would give the drugs to me or to girls instead of to him.
Q. Okay.
A. And that is all I knew.
Q. All right. What else did he say about why he kidnapped you?
A. That was all he said at that time and then as we were driving through the parking lot, he asked me, you know, where I went to school and I told him Tech and I asked him where he was from and he told me Philadelphia.
Q. Okay. How did this conversation come about?
A. Well, I was asking him, you know, why did he have to — you know, why he wouldn’t let me go and just, you know, he could go on and he said that he was just in town for a few days and he wanted to have some fun.
Q. Where were you all when you were having this conversation?
A. We had drove through the parking lot of McMillan Mall.
Q. Okay. What else did he say to you while you all were driving back to Hines Plaza?
That was really it. !>
Okay. «O

That was all he said. >

Only on cross-examination was the ransom element raised in this series of questions:
Q. ... the only time he physically threatened you [was when] he told you not to bite him ... ?
A. He told me that, but when we got in the truck he said that he had a knife and if I didn’t do what he said, that he would use it.
Q. Did he ever say to you that he was going to kill you?
A. No, Sir, he just said that he would use the knife ... if I didn’t do what he said....
Q. Did he take any property from you?
A. No, sir.
*940 Q. ... Did he tell you that he was going to let you go if you had sex with him?
A. No, sir.
The crime of aggravated kidnapping has been held to be limited to cases of kidnapping for ransom, or “with intent to extort" (State v. Moore, 432 So.2d 209, 225 (La.1983)), and that where there is no evidence that the defendant forced the victim to submit sexually to him in order to gain her release, the essential ransom element of the crime cannot be found beyond a reasonable doubt. State v. Doolittle, 482 So.2d 896 (La.App.2d Cir.1986), writ denied).
Aggravated kidnapping is the doing of any of the following acts with the intent thereby to force the victim, or some other person, to give up anything of apparent present or prospective value, or to grant any advantage or immunity, in order to secure a release of the person under the offender’s actual or apparent control: * * * LRS 14:44, in part. Emphasis added.
Simple kidnapping does not contain the ransom element.
A. Simple kidnapping is:
(1) The intentional and forcible seizing and carrying of any person from one place to another without his consent;
[[Image here]]
LRS 14:45, in part.
There is simply nothing in the record to support the conclusion that defendant evidenced any intent, or promised, to release the victim if she either purchased drugs for him or had sex with him. The attempted murder arose after the kidnapping and sexual crimes occurred.
We discussed the importance of proving the ransom element, actually the element of defendant’s intent, in State v. Doolittle, supra. Doolittle’s victim was abducted, subjected to cunnilingus, raped at gunpoint, and thereafter released. Doolittle did not attempt to murder his victim as Arnold did. We said:
Although sexual intercourse has been held to be a thing of value, there is simply no evidence in this record which shows that defendant forced the victim to engage in sexual intercourse “in order to secure [her] release ...”
In State v. Moore, 432 So.2d 209 (La. 1983), the supreme court found that an essential element of aggravated kidnapping is the intent to force the victim or another to give up a thing of value “in order to secure a release.” ...
Where there is no evidence which shows that the victim submitted to defendant to gain her release, a rational trier of fact could not have found that essential element of aggravated kidnapping beyond a reasonable doubt.... 482 So.2d at 901.
In Doolittle, supra, we noted cases which were contended as holding the ransom element need not be proved under aggravated kidnapping where the victim was violently raped. We declined to accept that contention in Doolittle. Both State v. Rault, 445 So.2d 1203 (La.1984), cert. denied, and State v. Winn, 412 So.2d 1337 (La.1982), contain the statement that the kidnapping of a person with the intent to commit rape satisfies the requirement that the perpetrator has the intent to force the victim to give up something of value.
Neither case squarely discussed the necessary ransom element. Both cases, however, rely on opinions in one case which arose out of the abduction by two brothers of a young couple parked in a remote area late at night. The girl was raped before she and her boy friend were murdered. The girl was told that if she submitted sexually, she and her boyfriend would be released. Sexual gratification was held to be something of apparent value for purposes of the aggravated kidnapping statute. See State v. Elmo Patrick Sonnier, 379 So.2d 1336 (La.1979), 402 So.2d 650 (La.1981), cert denied. See also State v. Eddie James Sonnier, 380 So.2d 1 (La.1979).
The State’s reliance on the Sonnier cases, supra, is misplaced. The Sonnier cases do not establish that the “ransom” *941 element necessary to convict of aggravated kidnapping may be deduced from the circumstances of the present case. State v. Dupre, 369 So.2d 1303 (La.1979), also cited by the State, is inapplicable, because aggravated kidnapping is there discussed as it pertains to other crimes evidence and jury instructions.
The essential difference between aggravated kidnapping and simple kidnapping is the intent to extort. State v. Polk, 376 So.2d 151 (La.1979) (fn. 1); State v. Harris, 480 So.2d 943 (La.App. 2d Cir.1985).
We find, however, that the evidence, as shown by the detailed facts hereafter recited, supports a conviction of simple kidnapping beyond a reasonable doubt, a lesser included offense of aggravated kidnapping. CCrP Art. 821(E); State v. Doolittle, supra.
MORE DETAILED FACTS
Defendant, a 30-year-old drill sergeant in the army reserve, is over 6'6" tall and weighs 270 pounds. The victim is a 20-year-old female, 5'4", and 110 pounds.
Defendant accosted the victim during the early evening in a parking lot as she was returning to her truck from a grocery store. As she approached her truck from a distance she saw defendant depart from his car, an older model light colored Mercury.
The defendant intercepted and told the victim from behind as she prepared to unlock her truck that he had a knife and would use it if she did not do what he told her. She said, “Excuse me?” He repeated the threat. She then entered her truck and attempted to unlock and exit the passenger side. Defendant grabbed her by the hair and warned her not to make further attempts to escape him. When defendant drove away the victim yelled for help but was forced to lean down in the seat while defendant held her hair and the knife.
Defendant drove to another parking lot and ordered victim to remove her pants and panties. Defendant drove away from this lot when another vehicle drove up. He later returned to the lot where he attempted three times to vaginally rape the victim, compelling her with the knife to assist his third effort. Again threatening her with the knife if she bit or hurt him, he forced victim to perform fellatio and cause him to climax. He coerced this performance by keeping the knife against her body and scratching her buttocks with it.
Defendant permitted the victim to dress while he cleaned himself and wiped the interior of the truck with a white towel, apparently to remove fingerprints. He then stuck the towel in her mouth and told her to get out of the truck. As she attempted to do so, he grabbed her hair, pulled her over, and stabbed her in the neck. The victim struggled with him, pulled the knife from her neck, and was cut on her hands and thigh. Defendant then forcibly threw or pushed the victim from the truck. She ran screaming for help.
Residents of the apartments served by the parking lot who saw the victim and defendant fighting gave descriptions of defendant which corroborated the description given by the victim to police. They saw defendant move the white towel on the ground with his foot, get something out of the truck which he repeatedly dropped, and thereafter calmly walk away.
Police arrested defendant when he walked into the grocery store parking lot where he kidnapped the victim and where his car was parked. Defendant had fresh cuts on his hands and was later identified in a photographic lineup.
Defendant told police and testified that he did not know what he was doing because he had consumed alcoholic beverages and had been forced by an armed hitchhiker to smoke marijuana. Defendant said he had no memory of the crimes.
Defendant attempted to murder his victim, that is, to cause death or great bodily harm by stabbing her in the neck, an intentional crime not congruous with the intent to release his victim if she submitted to his force and gave up something of value. Under the circumstances of this record, we affirm the conviction for at *942 tempted murder, but not the aggravated kidnapping.
THE SENTENCES
Defendant was sentenced to 20 years at hard labor (maximum exposure 50 years) for attempted aggravated rape, to 15 years at hard labor (maximum exposure 15 years) for aggravated crime against nature, and 20 years at hard labor (maximum exposure 50 years) for attempted second degree murder. All three sentences were made concurrent and without benefit of probation, parole or suspension of sentences. For the aggravated kidnapping, defendant was sentenced to the mandatory life imprisonment without benefit of probation, parole or suspension of the sentence which was made consecutive with the three concurrent sentences.
Defendant contends his sentences are illegally excessive because the three concurrent sentences do not meet the guidelines of CCrP Art. 894.1 and are to be served consecutively with the mandatory life sentence without benefit of probation, parole, or suspension of sentence for aggravated kidnapping. This assignment has no merit regarding the three concurrent sentences which we affirm.
The trial judge need not articulate every aggravating and mitigating circumstance in CCrP Art. 894.1 so long as the record reflects the statutory guidelines were adequately considered in particularizing a defendant’s sentence. The most important elements in sentencing are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense and likelihood of rehabilitation. State v. Hall, 519 So.2d 391, 393 (La.App. 2d Cir.1988).
The trial court, with benefit of the presentence report, noted the defendant was a 30-year-old high school graduate who was born and reared in Pennsylvania. He was honorably discharged from the service after attaining the rank of E-5 and serving in Hawaii, Korea and New Zealand. After leaving military service, defendant returned to Pennsylvania, married and moved to Louisiana, where his wife had relatives. No children were born to the marriage, although his wife had children. At sentencing, his wife had moved out of state.
In Louisiana, defendant worked as a groundskeeper before being discharged for poor work. He then worked in a warehouse until the business closed in 1986. Except for being in the Army Reserve at the rank of E-6, defendant was unemployed when arrested.
Specifically finding no mitigating factors except for defendant’s lack of prior criminal record, the trial court stated it was difficult to imagine a more serious and heinous crime, the victim of which may well be marked for life. She is fearful of engaging in the most everyday undertakings and was fortunate to have survived the stab in her neck where she could easily have been mortally wounded and for which she was hospitalized several days.
Detailing the evidence against defendant, the court specifically rejected his defense of intoxication and noted that throughout the course of his horrendous conduct his actions were very deliberate, careful, well-planned and intelligently executed. The trial court contrasted the size of the victim and defendant.
Pointing to defendant’s adequate education, training, and family, the trial court found no reason or mitigation for defendant’s conduct. The trial court held that any lesser sentences would deprecate the extreme seriousness of the offenses. The sentences pronounced would have removed defendant from society for the remainder of his life.
DECREE
Defendant’s conviction of aggravated kidnapping is set aside and defendant is convicted of simple kidnapping. The case is remanded for resentencing for simple kidnapping. All other convictions and sentences are affirmed.
*943 SET ASIDE AND REMANDED IN PART; AFFIRMED IN PART.