548 So.2d 920 (1989)
STATE of Louisiana
v.
Dewayne E. ARNOLD.
No. 88-K-2603.
Supreme Court of Louisiana.
September 12, 1989.
*921 William J. Guste, Jr., Atty. Gen., James Norris, Jr., Dist. Atty., Kathy McCoy, Asst. Dist. Atty., for applicant.
Elijah Young, for respondent.
COLE, Justice.
Defendant Dewayne Arnold was found guilty by a jury of attempted aggravated rape, aggravated crime against nature, attempted second degree murder and aggravated kidnapping. He was sentenced to twenty years at hard labor for the attempted aggravated rape, fifteen years at hard labor for the aggravated crime against nature, twenty years at hard labor for the attempted second degree murder, and life imprisonment for the aggravated kidnapping. The sentences were ordered served without the benefit of probation, parole or suspension, and all the sentences were to be served concurrently, except for the aggravated kidnapping sentence, which was to be served consecutively to the others.
Defendant appealed, arguing the evidence did not support his conviction for aggravated kidnapping and further contending that his sentence was excessive. The court of appeal found the evidence insufficient to support a conviction for aggravated kidnapping. However, the court found the evidence supported a conviction for simple kidnapping and remanded for resentencing. The court affirmed all other convictions and sentences. 535 So.2d 937 (La.App. 2d Cir.1988).
We granted the state's application for writs in order to consider the correctness of this decision. 538 So.2d 580 (La.1989). For the reasons hereafter set forth, we affirm in part and reverse in part.

FACTS
In the early evening hours of February 24, 1987, defendant approached the twenty year old female victim in a grocery store parking lot in Monroe, Louisiana. As the victim attempted to unlock the door of her truck, defendant grabbed her by the hair, ordered her into the truck and got in on the driver's side. The victim attempted to exit from the passenger door, but defendant pulled her back by the hair and warned her not to try to escape again. Defendant continued to hold the victim by the hair, and ordered her to lean down on the seat so no one would see her. As defendant drove away from the parking lot the victim cried out for help, but to no avail. The victim asked defendant why he had kidnapped her, and he replied that he was taking her to a drug dealer who would apparently not sell to defendant, but who would sell to women. When the victim again asked why defendant would not let her go, he responded "he was just in town for a few days and he wanted to have some fun." During the entire drive, defendant held a knife on the victim and told her if she "didn't do what he said, he would use the knife."
Defendant stopped in the parking lot of a nearby apartment complex and ordered the victim to remove her pants and underwear. Upon seeing another vehicle enter the parking lot, defendant started the truck, drove a short distance down the street, then returned to the parking lot. Defendant attempted three times to vaginally rape the *922 victim, but was unable to achieve penetration. Then, defendant made the victim perform fellatio on him, threatening her with the knife if she bit or hurt him and coercing her performance by keeping the knife against her body and scratching her buttocks with it. After completion of the act, defendant wiped out the interior of the truck with a towel in an apparent effort to remove fingerprints. Defendant stuck the towel in the victim's mouth and told her to leave the truck. However, as she attempted to leave, defendant grabbed her hair, pulled her sideways and stabbed her in the neck. Although bleeding profusely, the victim managed to pull the knife from her neck and began struggling with defendant. Defendant finally threw her from the truck, and she ran toward the nearby apartment complex.
The victim was taken by ambulance to a hospital, where she gave police a description of defendant. Residents of the apartment complex who witnessed the struggle corroborated her description. Defendant was apprehended shortly thereafter as he walked back to the grocery store parking lot to retrieve his car.

ISSUE
The legal issue before us is whether a person who forcibly seizes and carries away another person with intent to rape her can be found guilty of aggravated kidnapping, where there is no explicit communication by the kidnapper to the victim that she will only be released if she complies with his demands for sexual gratification, but the circumstances are such that a reasonable person would implicitly understand submission is the price for safe release.

ANALYSIS
La.R.S. 14:44 provides:
Aggravated kidnapping is the doing of any of the following acts with the intent thereby to force the victim, or some other person, to give up anything of apparent present or prospective value, or to grant any advantage or immunity, in order to secure a release of the person under the offender's actual or apparent control:
(1) The forcible seizing and carrying of any person from one place to another; or
(2) The enticing or persuading of any person to go from one place to another; or
(3) The imprisoning or forcible secreting of any person.
Whoever commits the crime of aggravated kidnapping shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.
The present definition of aggravated kidnapping evolved from an early law first enacted in 1855. At that time, kidnapping was not necessarily classified as a felony and was limited to unlawful confinement and transportation of "any free person" out of the state or from one part of the state to another. The statute was in accord with the common law, which had classified kidnapping as a misdeameanor and limited the offense to unlawful confinement and transportation of another out of the country and beyond the protection of its laws. Following the Civil War, the statute was changed to read "any person," but otherwise remained the same. The statute was substantially altered in 1910 to prohibit the forcible taking of children under age fourteen (male) or twelve (female). The penalty was increased from a maximum of five years to a mandatory penalty of death. In 1914, the penalty was reduced to a maximum of twenty years. By 1932, the statute was extended to cover the forcible seizing and carrying of "any person or persons," although the penalty remained the same. After the nationwide furor surrounding the kidnapping of the Lindberg baby in 1932, the legislature in 1938 again increased the penalty to death. In 1942, the legislature enacted the crime of aggravated kidnapping and provided for a penalty of death. This statute, unlike previous kidnapping statutes, embodied an intent requirement on the part of the kidnapper. The reporter's comments to the article noted this change:
*923 Louisiana statute comparedintent to extort:
The former Louisiana kidnapping statute provides for the death penalty and apparently applies to all cases, regardless of the kidnapper's intent. The aggravated kidnapping article also carries the death penalty, but is limited to cases of kidnapping for ransom (with intent to extort). Other kidnappings will be punishable as simple kidnapping. [Citations omitted].
Thus, from its inception, the critical distinction between the crime of aggravated kidnapping and the crime of simple kidnapping is the kidnapper's intent to extort. The elements of aggravated kidnapping have remained essentially unchanged since 1942, although the statute was amended in 1980 to eliminate the death penalty and make the penalty a mandatory life sentence.
A careful analysis of the present statute shows the elements of aggravated kidnapping to be:
1. The forcible seizing and;
2. the carrying of any person from one place to another (the asportation element);
3. with the intent to force the victim, or some other person, to give up anything of apparent present or prospective value (the extortion element);
4. in order to secure the release of that person.
There is no question the first element was met, i.e., the victim was forcibly seized. She was grabbed in the parking lot of a grocery store, forced inside her truck, and threatened with a knife if she resisted. Likewise, the second element was satisfied since defendant drove the victim from one parking lot to another in an attempt to isolate her from passersby.
The third element is also met since under our decisions, the seizure of the victim with intent to commit rape constitutes intent to force her to give up something of "apparent present or prospective value." State v. Rault, 445 So.2d 1203 (La.1984), cert. denied, Rault v. Louisiana, 469 U.S. 873, 105 S.Ct. 225, 83 L.Ed.2d 154 (1984); State v. Winn, 412 So.2d 1337 (La.1982); State v. Sonnier, 402 So.2d 650 (La.1981), cert. denied, Sonnier v. Louisiana, 463 U.S. 1229, 103 S.Ct. 3571, 77 L.Ed.2d 1412 (1983).
The court of appeal apparently agreed these first three elements were satisfied but had difficulty with the fourth element, since it found "no evidence in this record which shows that defendant forced the victim to engage in sexual intercourse `in order to secure [her] release....'" 535 So.2d at 940. We disagree. From our review of the record, we conclude the clear implication of defendant's behavior is that the victim would be released safely only if she acceded to defendant's demand for sexual gratification.
Defendant would have this court expand the fourth element and require the state to prove, either directly or circumstantially, that he explicitly communicated to the victim his intent to release her once he was in receipt of ransom (i.e., sexual gratification). A review of the history of the statute and our jurisprudence reveals such a requirement has never been part of the law of aggravated kidnapping. Rather, all the law has required is evidence of defendant's intent to extort something of value by playing upon the victim's hope of release. In State v. Polk, 376 So.2d 151 (La.1979), Justice Tate observed:
The kidnapping is classified as "aggravated," La.R.S. 14:44, rather than as far less serious "simple kidnapping," La.R.S. 14:45, solely because the seizure and asportation of the victim was made with the intent to rape her"to force the victim... to give up anything of apparent present or prospective value" (i.e., the offender's sexual gratification), La.R.S. 14:44; for the intent to extort is the essential difference between the two crimes.
376 So.2d at 152 n. 1 (emphasis added).
It is noteworthy that Justice Tate omitted any mention of explicit communication by the kidnapper to his victim that she would be released only after payment of ransom. Instead, he focused on the requisite intent to obtain something of value *924 through the advantage of the victim's fear and isolation, for it is this advantage which is at the heart of the offense of kidnapping. Similarly, if explicit communication were essential to the crime of aggravated kidnapping, it is highly unlikely we would have omitted discussion of it from our statement of the law in State v. Winn, supra, and State v. Rault, supra.
Winn, supra, involved a defendant who kidnapped his victim at gunpoint from a church, led her into the woods and raped her. The Winn defendant, much like the defendant in the present case, told his victim he would not kill her as long as she cooperated with him, but apparently did not communicate to her that she would only be released after complying with his demand for sexual gratification. This court found the evidence was sufficient to convict defendant of aggravated kidnapping.
Rault, supra, involved the review of a death penalty conviction of a defendant who kidnapped, raped and murdered his victim. Witnesses testified they heard the victim screaming defendant was going to rape her, but there was no evidence defendant explicitly communicated to the victim she would only be released upon submitting to him. In reviewing the aggravated kidnapping conviction, we concentrated on the defendant's intent:
In regard to aggravated kidnapping, the only possible hypothesis of innocence, given the clear proof of forcible abduction, is that defendant had no intent to force the victim to cede some property, i.e., sexual intercourse, to secure her release. In other words, when Rault abducted the victim from the parking lot, he had no intent to rape her, only to kill her. This hypothesis is negated by the victim's words as she was being forced into the car.
445 So.2d at 1213.
We did not require evidence of explicit communication by the kidnapper to his victim. Instead, we properly focused on defendant's intent, concluding that under these circumstances, a reasonable person would know the price of safe release was submission, and defendant intended to play upon this hope of release.
Therefore, a study of the applicable jurisprudence clearly shows the relevant factor in applying the fourth element of aggravated kidnapping is not whether the kidnapper explicitly communicated to the victim that performance of sexual acts would result in his or her release, but whether the kidnapper intended to extort sexual gratification from the victim by playing upon the victim's hope for release. This intent is manifested not merely by the kidnapper's words or actions, but by analyzing whether a reasonable person in the victim's place, given the totality of the circumstances, would believe that he or she would not be safely released unless he or she complied with the kidnapper's demands for sexual gratification. Clearly, any reasonable person who was forcibly seized, brought to a remote location, held at knifepoint and threatened in no uncertain terms with the use of that weapon, would comply with the abductor's demands in the hope of securing a safe release. Defendant's threat to the victim that he would "use the knife" if she did not do what he ordered plainly manifested his intent to force her to give in to his sexual demands with the hope of securing her safe release. Requiring additional evidence that defendant expressly announced to the victim she would not be released unless she complied with his demands is overly technical and unnecessary within the parameters of La.R.S. 14:44.
Furthermore, such a requirement could potentially give kidnappers an incentive to kill their victims. Given the nature of the crime of kidnapping, the only potential witness is often the victim. If we were to adopt the explicit communication requirement advocated by defendant, the kidnapper who slays his victim would stand little chance of being convicted of aggravated kidnapping, since the only person who could testify about communication would be dead. Meanwhile, a less culpable defendant who verbally promises to release his victim once she complies with his demands and actually does so would be subject to prosecution for aggravated kidnapping *925 based on the victim's testimony. By looking to the victim's perception of what he or she must do in order to survive, we avoid such an anomalous result.
Thus, the crucial question in determining whether an aggravated kidnapping has occurred is not whether the defendant had intent to release the victim at either the outset of the crime or indeed at any point during the crime. The more important question and the issue to be focused upon is whether the defendant sought to obtain something of value, be it sex or money or loss of simple human dignity, by playing upon the victim's fear and hope of eventual release in order to gain compliance with his demands.
After reviewing the evidence in the light most favorable to the prosecution, we believe any rational trier of fact could have found the essential elements of the crime of aggravated kidnapping were proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Accordingly, we believe the court of appeal erred in finding otherwise and setting aside the conviction for aggravated kidnapping.

DECREE
For the reasons assigned, the judgment of the court of appeal is reversed insofar as it sets aside defendant's conviction for aggravated kidnapping and remands for resentencing for simple kidnapping. Defendant's conviction for aggravated kidnapping is reinstated. In all other respects, the decision of the court of appeal is affirmed.
AFFIRMED IN PART, REVERSED IN PART.
LEMMON, J., concurs and assigns reasons.
CALOGERO, J., concurs in part, dissents in part and assigns reasons.
LEMMON, Justice, concurring.
The court of appeal reversed the aggravated kidnapping conviction because the evidence was insufficient for a rational juror to conclude beyond a reasonable doubt that "defendant evidenced any intent, or promise, to release the victim if she either purchased drugs for him or had sex with him". I agree with the majority of this court that the record does support the intent element required for an aggravated kidnapping conviction.
The intent element for the crime of aggravated kidnapping in this case involves an examination of the facts and circumstances surrounding defendant's words and conduct to determine whether he intended to force the victim to give up something of value in order to secure her release.[1] It was not necessary for the prosecutor to prove by direct evidence that defendant promised the victim he would release her safely if she paid him ransom in the form of sex acts. Proof of defendant's threat to use the knife unless she acted as directed, followed immediately by his moving her to an isolated location and making knifepoint demands for sex, was circumstantial evidence which carried the unmistakable implication of his intent at the time of abduction to force the victim to give up something of value (sex acts) in order to obtain her release.[2] The direct and circumstantial evidence, *926 viewed in the light most favorable to the prosecution, was sufficient for a rational trier of fact to find beyond a reasonable doubt all of the essential elements of the crime, including the requisite intent. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
The fact that defendant stabbed the victim as she was getting out of the truck may tend to suggest that he never intended to release her unharmed. However, the critical focus should be on whether the kidnapper intended, at the time of abduction, to force the victim to give up something of value in order to obtain her release, and not on whether the kidnapper actually intended to release the victim after she gave up something of value. Indeed, a kidnap victim's success in obtaining a safe release after payment of ransom may be the exception rather than the rule, and this factor certainly bears little significance on the determination of the kidnapper's intent at the time of abduction to force the victim to give up something of value in order to obtain her release.
Furthermore, the kidnapper's conduct in this type of case constituted a separate and distinct crime that was not merely incidental to the underlying forcible rape attempt. See Model Penal Code, § 212.1 (1980). Defendant probably could not have accomplished the rape of the victim in the supermarket parking lot where customers and security officers were likely to be alerted to the crime.[3] The forcible seizure and movement of the victim was necessary to significantly lessen the risk of detection and to facilitate defendant's commission of the intended sexual felony (which he demanded implicitly in return for her safe release) and his escape thereafter. The carrying of the victim from the place of abduction to a more secluded location also significantly increased the risk that the victim would not be released unharmed.[4] These considerations warrant the conclusion that the seizure and removal of the victim "from the protection of law and assistance of friends" was conduct "sufficiently important to be punished as a distinct criminological wrong". Model Penal Code, supra, at 224.
CALOGERO, Justice (concurring in part and dissenting in part).
I dissent in part because I agree with the opinion of the court of appeal that there was insufficient evidence, all of which was circumstantial, to prove under the Jackson v. Virginia standard that Defendant had the intent "to force the victim, or some other person, to give up anything of ... value ... in order to secure a release ..." (Emphasis provided.) La.R.S. 14:44. The court of appeal was correct in determining that there was "nothing in the record to support the conclusion that defendant evidenced any intent, or promised, to release the victim if she either purchased drugs for him or had sex with him." State v. Arnold, 535 So.2d 937, 940 (La.App. 2d Cir. 1988).
I also point out that the majority opinion misstates the position of the Defendant and the position taken by this dissenter in an earlier circulated opinion (which obviously did not secure sufficient votes), when he suggests that we would require an explicit communication by a kidnapper to a victim that the victim will only be released if she *927 complies with the demands of her abductor, in this case, sexual gratification.
This writer does state that an express statement by the defendant consistent with the requisite statutory intent would be the best evidence. However, such an express statement is obviously not the only type of satisfactory evidence. Rather, any adequate circumstantial evidence will do. I submit that some relevant factors which might be considered in ascertaining a defendant's intent are these:
1. Was the victim made to understand that submitting would secure her release?
2. Were the defendant's actions following the victim's submission consistent with a defendant's outset intent to release the victim upon "payment"?
3. Were the circumstances surrounding the abduction consistent with the aggravated kidnapping (an abduction for ransom, or an abduction coupled with extortion)? Or were the circumstances merely incidental to the commission of a forcible felony like aggravated rape, for instance, sexual intercourse where the victim is prevented from resisting because the defendant is armed with a dangerous weapon.
These factors do not depend on an express statement by the perpetrator.
The critical issue which must be determined is the defendant's intent at the time of the abduction to force the victim to give up sex in the hope of securing release. There is insufficient evidence to show that the defendant had such intent. Defendant never told the victim that she would be released if she submitted, nor did his actions convey an intent to release her following his gratification, for instead of releasing her, defendant attempted to kill her by stabbing her in the neck. Therefore, neither defendant's explicit statements to the victim, nor his actions showed an intent on his part to obtain something of value in exchange for her release. Furthermore, there was no evidence that the victim believed that submission was the price for her release, but rather, that submission was the price for avoiding harm.
The fault with the majority's assessment is their minimizing or disregarding the essential element of a defendant's intent to force the surrender of a thing of value in order to secure the release of the victim. There are, admittedly, two cases where that element was not discussed. See, State v. Winn, 412 So.2d 1337 (La.1982) and State v. Rault, 445 So.2d 1203 (La.1984). Both cases correctly stated that seizure of a person with intent to commit rape satisfies the requirement that the perpetrator has the intent to force the victim to give up "anything of apparent present or prospective value," (Winn, 412 So.2d at 1348 and Rault, 445 So.2d at 1213), for this court has determined that sexual gratification constitutes something of apparent value for the purposes of aggravating kidnapping. State v. Dupre, 369 So.2d 1303 (La. 1979). However, ransom, or payment in return for release, is distinctly mentioned as a requirement in Dupre, and sex as ransom is what distinguishes aggravated kidnapping from other offenses where sex is forced from the victim.
Furthermore, both of these cases cited State v. Sonnier, 379 So.2d 1336 (La.1979), a case in which the victim was told by the assailants that she would be released if she submitted to their sexual desires.[1] Simply because Rault and Winn do not discuss the ransom element, should not lead us to interpret them as holding that "seizure of a person with the intent to commit rape," without more, sufficiently establishes the crime of aggravated kidnapping. Ransom *928 is an essential element under the statute and the jurisprudence.[2]
Determination of the defendant's intent in this regard is admittedly often difficult. We have found the critical ransom element unsupported by the evidence in other cases, basically through a facts and circumstances analysis. State v. English, 367 So.2d 815, appendix at 823 (La.1979); State v. Moore, 432 So.2d 209, 225 (La.1983); State v. Brooks, 505 So.2d 714 (La.1987); State v. Johnson, 541 So.2d 818 (La.1989).[3]
In this case, although defendant used a knife at the point of abduction and during the sexual offenses, such conduct was consistent with the sexual offenses committed by him. A circumstance of both attempted aggravated rape and aggravated crime against nature is that the victim is prevented from resisting "because the offender is armed with a dangerous weapon." La.R.S. 14:42(A)(3); La.R.S. 14:89.1(A)(3).[4] There was little or no evidence, or even plausible inferences from the evidence, that defendant intended to force sex from the victim by leading the victim to understand that submission would be the price of release. There was merely defendant's use of the knife to prevent resistance to sex and the implication that if the victim did not resist she would not be harmed. Specifically, defendant told the victim at the point of abduction that "he would use the knife if she did not do what he said" and then that he *929 would use the knife if she "tried to bite him" during fellatio. The direct and circumstantial evidence surrounding the abduction and asportation of the victim, and the knife threats and subsequent sexual offenses perpetrated against the victim, could not have satisfied a rational juror that defendant intended to have the victim pay a price (sex) for her release, rather than that defendant simply intended to prevent resistance to his sexual advances because he was "armed with a dangerous weapon." La.R.S. 14:42(A)(3); La.R.S. 14:89.1(A)(3).[5] The state's purely circumstantial case does not exclude every reasonable hypothesis of innocence.
The majority focuses entirely on the purported fear of the victim, rather than the intent of the defendant. The opinion states that any reasonable person in the victim's place would implicitly understand that submission to the defendant's demands is the price for securing a safe release; therefore, they conclude that the requisite element of aggravated kidnapping is met. This, however, is not in accordance with the requirements of the aggravated kidnapping statute, which requires an intent by the abductor "to force the victim ... to give up anything of ... value ... in order to secure a release ..."
It is the defendant's intent at the time of "abduction"[6] to have the victim or another give up something of value, on the latter's assumption that such "payment" will effect the release of the victim, that distinguishes aggravated kidnapping from simple kidnapping. Whether or not the victim or third person complies with the demand is irrelevant.
On the other hand, understanding by the victim or other person, that "payment" will likely secure release, is a relevant fact which lends support to the state's proof of the all important and essential (perpetrator's) intent.
To support a conviction of aggravated kidnapping in this case, the prosecution had to prove, in addition to the asportation element (movement of the victim), that the intent of the defendant, at the time of abduction, was to force the victim to give up something of value (sex) in order to secure her release. This the state failed to do. They failed to prove beyond a reasonable doubt that the defendant in any manner conveyed an intent to release the victim following the fulfillment of his demands. Defendant did not do this by his actions, nor did he do so expressly.
The court of appeal properly concluded that the evidence presented in this case was insufficient to support a conviction for aggravated kidnapping. The evidence does, however, support a conviction of simple kidnapping, a lesser included offense of aggravated kidnapping. As the court of appeal found, there was ample proof that defendant committed a simple kidnapping, i.e., he forcibly and intentionally seized and carried the victim from one place to another without her consent (La.R.S. 14:45).
For these reasons, I would affirm the defendant's convictions for attempted aggravated rape, aggravated crime against nature, and attempted second degree murder and the sentences imposed by the court of appeal for these offenses, but would *930 reduce the aggravated kidnapping to simple kidnapping and remand for resentencing. For these reasons, I concur in the majority's affirmance of the convictions for attempted aggravated rape, aggravated crime against nature, and attempted second degree murder, but dissent from the conviction of aggravated kidnapping and the sentence imposed.
NOTES
[1] The Louisiana Legislature has not followed the lead of other states in broadening the definition of aggravated kidnapping to include motives other than ransom (such as facilitating the commission of a crime). See the model kidnapping statute in Model Penal Code, § 212.1 (1980), which provides in part:

A person is guilty of kidnapping if he unlawfully removes an other from his place of residence or business, or a substantial distance from the vicinity where he is found, or if he unlawfully confines another for a substantial period in a place of isolation, with any of the following purposes:
(a) to hold for ransom or reward, or as a shield or hostage; or
(b) to facilitate commission of any felony or flight thereafter; or
(c) to inflict bodily injury on or to terrorize the victim or another; or
d) to interfere with the performance of any governmental or political function. (emphasis added).
[2] When defendant forcibly abducted the victim at knifepoint, telling her he would use the knife if she did not do as she was told, any reasonable person in the victim's position might have believed that defendant would not use the knife and would release her if she complied with his demands. Defendant's movement of the victim from the place of abduction, combined with his demand for sexual acts with the knife at the victim's back immediately upon arriving at a safer location, constituted sufficient evidence that defendant intended, at the time of the abduction, to force the victim to give up something of value (sex acts) in order to secure her release.
[3] Had the kidnapper confronted the victim in an isolated area, the same use of force would have been necessary to overcome the victim's resistance, but seizure and movement of the victim would not have been required. A victim can protect herself from such rape attacks by avoiding isolated areas while traveling alone. This victim was in a supermarket parking lot during store hours, and a kidnapping was necessary to remove her to an isolated area.
[4] A robber's moving a victim at knifepoint from one room to another for the purpose of opening a safe arguably should not be punished as a kidnapping. This case does not present such an insignificant movement or difference in risk.
[1] Winn cites State v. Sonnier, 379 So.2d 1336 (La.1979), as authority for its holding. In Sonnier, this court held that "there was sufficient evidence that the defendant and his brother abducted the couple with the intention of forcing the female victim to engage in sexual relations in order to secure the couple's safe release." On other grounds, this court ordered a new sentencing hearing. Sonnier was again sentenced to death. Rault cites this court's review of Sonnier's second death sentence, 402 So.2d 650 (La.1980), wherein this court again found the commission of an aggravated kidnapping, in an opinion which did not mention the ransom element (obviously an unintentional omission).
[2] The majority's reliance on Justice Tate's opinion in Polk, supra, is also misplaced. This case dealt with a defendant's entitlement to bail when charged with aggravated rape and aggravated kidnapping. At that time, aggravated kidnapping was still legislatively defined as a capital crime even though the U.S. Supreme Court held the death penalty was unconstitutional in such instances. The case considered whether the legislative definition still governed the entitlement to bail even though the death penalty could not be imposed, or whether the Supreme Court's ruling required a reclassification of the crime on the bail issue as well. The Court did not rule on the elements of aggravated kidnapping.
[3] In State v. English, supra, this court found that the extinction of a debt by killing the creditor was arguably the gaining of something of value under La.R.S. 14:44, but held that there was no aggravated kidnapping because there was no evidence that defendant intended to condition the release of the victim upon the payment of ransom. In State v. Moore, supra, this court determined that although the evidence established that a murder victim was deprived of his valuables, there was no evidence in the record from which any rational trier of fact could have concluded that the victim was deprived of his valuables in exchange for his release or promise of release. In State v. Brooks, supra, this court determined that although a victim was bound, driven to a remote location, raped, then killed, the existence of an aggravated kidnapping was "equivocal" and "may well have been insufficient" because there was no evidence that defendant intended by that conduct to force the victim or some other person to give up anything of value as a condition of release. Lastly, in State v. Johnson, supra, this court found that the evidence was insufficient to support a jury finding that defendant killed the victim during the perpetration of an aggravated kidnapping where defendant tied up the victim, took her to a remote location, then killed her, because there was no evidence that defendant desired to prevent the victim from testifying against him (a thing of value) as a condition for her release.
[4] There exists an interesting debate in the legal literature, over the wisdom of punishing with the severe penalties associated with aggravated/first degree kidnappings, conduct which is essentially no more than an aggravated rape or armed robbery. Because there is usually a certain amount of movement of the victim and an element of extortion, coupled with use of a weapon in the commission of a rape or robbery, the conduct of the perpetrator can easily fall into the general language of most kidnapping statutes. The Model Penal Code advocates a restricted interpretation of kidnapping statutes in order to avoid "abusive prosecution" for kidnapping conduct which is a "criminologically insignificant circumstance" in the course of committing a rape or robbery. § 212.1, Comment (Ten. Draft No. 11, 1960). Prosecution for kidnapping in rape/robbery situations has been used as a means of securing a death sentence or life imprisonment for behavior which is essentially only a rape/robbery in jurisdictions where the offenses of rape/robbery are not subject to these more severe penalties. Id. Some commentators urge that aggravated kidnapping should be limited to those circumstances giving rise to a "distinct criminological wrong." Id. This has been defined as cases where the seizure and removal of the victim "from the protection of law and assistance of friends (is) sufficiently important to be punished as a distinct criminological wrong." Id.

In this case, we need not join the debate referred to in the paragraph above. The sufficiency of evidence in support of the defendant's intent concerning the element of ransom should be the primary concern.
[5] In a different scenario a defendant with sexual gratification as his motive might commit both aggravated rape and aggravated kidnapping. For instance, in State v. Dickinson, 370 So.2d 557 (La.1979), the same two defendants were convicted of having committed distinct aggravated kidnappings (one year apart), a single victim on each occasion. In each case, the victim was abducted at knife point in Baton Rouge and taken to Baker, La. Each was isolated in a darkened apartment for several hours, raped, then released. In this case, a rational trier of fact could have found that the defendants' outset intent was to extract sexual submission as a price of release. The circumstances surrounding the abduction (i.e., the substantial distance the victim was taken and the length of detention) were consistent with an aggravated kidnapping, as opposed to merely being incidental to the commission of aggravated rape. Also, the defendants' actions following each victim's submission were consistent with an intent to release each victim upon obtaining sexual gratification (i.e., each was transported back to the city of her abduction and released.)
[6] By "abduction," I refer to any of the three acts in La.R.S. 14:44, which are: (1), forcible seizing and carrying of a person from one place to another; or (2), enticing or persuading any person to go from one place to another; or (3), imprisoning or forcibly secreting any person.