STATE OF LOUISIANA IN     \*     NO. 2020-CA-0372
THE INTEREST OF D.F.

                         \*

                         **COURT OF APPEAL**

                         \*

                         **FOURTH CIRCUIT**

                         \*

                         **STATE OF LOUISIANA**

**\* \* \* \* \* \* \***

APPEAL FROM
JUVENILE COURT ORLEANS PARISH
NO. 2019-319-03-DQ-C, SECTION "C"
Honorable Candice Bates Anderson, Judge
**\* \* \* \* \* \***
**Judge Joy Cossich Lobrano**
**\* \* \* \* \* \***
(Court composed of Judge Daniel L. Dysart, Judge Joy Cossich Lobrano, Judge
Dale N. Atkins)

Leon Cannizzaro
District Attorney
DISTRICT ATTORNEY'S OFFICE, PARISH OF ORLEANS
Donna Andrieu
Irena Zajickova
Assistant District Attorneys
619 South White Street
New Orleans, LA 70118

       COUNSEL FOR THE STATE

Gregory M. Thompson
ATTORNEY AT LAW
1100 Poydras Street
Suite 2900
New Orleans, LA 70163

Katherine M. Franks
LOUISIANA APPELLATE PROJECT
P.O. Box 220
Madisonville, LA 70447

       COUNSEL FOR D.F./APPELLANT

                     **AMENDED; AFFIRMED AS AMENDED.**
                             **NOVEMBER 12, 2020**

*JCL, DLD, DNA*   Juvenile, D.F. ("D.F."), has filed the instant appeal arguing that insufficient evidence exists to find him guilty of aggravated kidnapping of one of the two victims involved in the incident described below. In addition, he argues that the disposition for this crime did not comply with La. Ch.C. art. 897.1 (D) and must be amended. After reviewing the appellate record and applicable law, we find sufficient evidence to affirm the conviction for aggravated kidnapping. Regarding the dispositions imposed for both counts of aggravated kidnapping, we amend the dispositions accordingly.

The State filed a delinquency petition with nine counts: two counts of armed robbery (La. R.S. 14:64); one count of aggravated battery (La. R.S. 14:34); two counts of aggravated kidnaping (La. R.S. 14:44); two counts of aggravated assault with a firearm (La. R.S. 14:37.4); one count of illegal use of weapons by discharging a weapon during the commission of a crime of violence (La. R.S. 14:95(F)); and one count of illegal possession of a handgun by a juvenile (La. R.S. 14:95.8).

1

D.F. entered a not true plea to the charges and his adjudication hearing took place on March 10, 2020. After hearing the evidence, the juvenile court judge adjudicated D.F. delinquent as to all counts.[1] The disposition judgment also provided: "State notes that pursuant to Ch.C. art. 897.1 for aggravated kidnaping, the Court cannot modify the disposition of Juvenile Life." D.F. filed this timely appeal.

The facts are not in dispute. In the early morning hours of November 5, 2019, two men, B.S. and F.B., were sleeping in B.S.'s car, a Ford Fusion ("Fusion"), in the parking lot of Walmart in Algiers, Louisiana. F.B. awoke and saw five males ("perpetrators") approach his car, a 2014 Buick that was parked next to the Fusion. He testified that at least three of the perpetrators were carrying

[1]

| COUNT | CRIME | DISPOSITIONS |
|-------|-------|--------------|
| Count 1 | La. R.S. 14:64 Armed Robbery (Ford Fusion - B.S.) | Age 21 |
| Count 2 | La. R.S. 14:64 Armed Robbery (Phone - F.B.) | Age 21 |
| Count 3 | La. R.S. 14:34 Aggravated Battery (B.S.) | Age 21 |
| Count 4 | La. R.S. 14:44 Aggravated Kidnaping (B.S.) | Age 21 |
| Count 5 | La. R.S. 14:44 Aggravated Kidnaping (F.B.) | Age 21 |
| Count 6 | La. R.S. 14:37.4 Aggravated Assault with a Firearm (B.S.) | 4 years |
| Count 7 | La. R.S. 14:37.4 Aggravated Assault with a Firearm (F.B.) | 4 years |
| Count 8 | La. R.S. 14:95(F) Illegal Use of Weapons by Discharging a Firearm During a Crime of Violence | 6 months |
| Count 9 | La. R.S. 14:95.8 Illegal Possession of a Handgun by a Juvenile | 6 months |

guns. He heard noises as the perpetrators broke into the Buick. Both victims were awakened as the perpetrators approached the Fusion and, with guns drawn, gestured for the two men to get out of the Fusion. The victims were directed into the back of the Buick. The perpetrators rummaged through the Fusion. They then forced the victims into the backseat of the Fusion with B.S. sitting on top of F.B. All five perpetrators got in afterward. The victims were told to put their heads down and, with guns against their heads, the perpetrators informed the victims they were going to kill them. The perpetrator behind the wheel of the Fusion, later identified as D.F., drove out of the Walmart parking lot to a location near Timber Court and Tullis Road. The perpetrators rummaged through the car's center console and glove compartment. They located B.S.'s wallet and removed approximately $120.00 from it. After ascertaining that the various credit cards were of no value, they discarded the credit cards and wallet in the street, along with clothing found in the vehicle along with B.S.'s cell phone once a Chase Bank debit card was discovered in a slot on the back of the phone.

The perpetrators drove to Chase Bank to see if they could obtain money from B.S.'s bank account using the debt card. Once there, D.F. attempted to use the ATM but did not know how. Another of the perpetrators walked him through the process and asked B.S. for the pin number. B.S. initially gave him the wrong number and when it did not work, the perpetrator became angry, struck B.S. on the head with his gun, and demanded the correct number. B.S. complied but D.F. was unable to withdraw $200.00. The perpetrators questioned B.S. who stated that he

had about $90.00 in the bank. They ultimately withdrew $80.00 and divided it up among themselves. While D.F. was making the ATM transaction, both victims were handcuffed behind their backs.

The perpetrators then drove toward the Mississippi River levee and attempted to reach the top, again telling the victims that they were going die. However, midway up the levee, the car got stuck. The perpetrators told the victims to get out of the car and run. Both victims heard shots fired behind them; the first shot came very close to them. They continued to run toward a light they could see in the distance. When they reached a shipyard, the source of the light, they banged on the door but no one answered. Eventually they located an intercom and asked if they could come inside. While the occupants did not let them in, the police were called.

Officer Len Major was the first officer to arrive. He located the handcuffed men behind the levee. He removed the handcuffs and put them in the back of his police unit to get warm. After interviewing them, he learned that, although he was initially dispatched to the shipyard in the 4500 block of Patterson Road, the incident began in the Walmart parking lot. The victims stated that they were driven in the Fusion to a location near Timber Court and Tullis Road before going to Chase Bank. At the Timber Court location, numerous articles of clothing, several credit cards, and a phone were in the street. Once the items were photographed, the victims were allowed to collect their belongings.

4

After clearing the Timber Court scene, Officer Major dropped the victims off at Brother's, a convenience store in the area. Lastly, he returned to the levee and unsuccessfully canvassed the area for shell casings.

B.S.'s car was recovered in Jefferson Parish; it had overheated due to a large hole in the radiator. State Trooper Lance Kramer was at a nearby Shell station getting gas when he saw the Fusion come to a stop near the intersection of Terry Parkway and the Westbank Expressway with smoke pouring out of it. He made a U-turn in order to approach the disabled car and saw four individuals running toward the levee. He called in the license plate number and, upon learning the car had been involved in an armed robbery, he reported its location.

Detective Tianay Marshall was the lead detective. She collected surveillance videos from Walmart, Chase Bank, and a third crime camera. From the Chase ATM footage, she recognized D.F. who she knew from previous incidents. She also learned that one of the other perpetrators was D.F.'s adult brother. The victims were shown photo-lineups the day after the incident. B.S. could not identify D.F. from the photo-lineup, but identified him at D.F.'s adjudication hearing. F.B. identified both D.F. and his brother from the photo-lineup and identified D.F. at trial.

D.F.'s mother testified at trial. A photo from a crime camera depicting a tattoo on an arm was shown to her and she identified it as her son's arm. She also identified him from a photo from Chase Banks's surveillance video.

## ASSIGNMENT OF ERROR 2

We first address D.F.'s second assignment of error. D.F. argues that the evidence is insufficient to support the disposition of aggravated kidnaping as to F.B. because nothing of value was taken from F.B. during the armed robbery event.

The Louisiana Supreme Court set forth the following standard of review of the sufficiency of the evidence:

> When reviewing the sufficiency of the evidence to support a conviction, Louisiana appellate courts are controlled by the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under this standard, the appellate court "must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt." *State v. Neal*, 00-0674, (La. 6/29/01), 796 So.2d 649, 657 (citing *State v. Captville*, 448 So.2d 676, 678 (La. 1984)).

*State v. Brown*, 03-0897, p. 22 (La. 4/12/05), 907 So.2d 1, 18.

D.F. states that the offense of aggravated kidnaping is more than the forced transportation of a person from one place to another. It also involves compelling the person to surrender something of value in the hope of obtaining release. D.F. agrees that B.S. was compelled to provide his debit card and pin number for the perpetrators to obtain money from his bank account. However, D.F. argues that the extortion element of aggravated kidnaping does not apply to F.B.

In response, the State disagrees and contends that it proved aggravated kidnapping as to F.B. because something of value was taken from B.S.to secure the victims' release. We agree.

Aggravated kidnapping, found in La. R.S. 14:44, states in pertinent part:

> Aggravated kidnapping is the doing of any of the following acts with the intent thereby to **force the victim, or some other person** to give up anything of apparent present or prospective value, or to grant

6

any advantage or immunity, in order to secure a release of the person under the offender's actual or apparent control:

> (1) The forcible seizing and carrying of any person from one place or another[.]

(Emphasis added.)

Aggravated kidnapping is a specific intent crime. Proof of intent to extort can be shown by "analyzing whether a reasonable person in the victim's position would believe that [he] would not be safely released unless [he] complied with the kidnapper's demands." *State v. Amos,* 15-0954, p. 8 (La.App. 4 Cir. 4/6/16), 192 So.3d 822, 828 (citing *State v. Arnold,* 548 So.2d 920, 924 (La. 1989)).

The facts demonstrate that both victims were placed in the back of the Fusion with orders to keep their heads down. The perpetrators put guns to their heads and threatened their lives. They drove to Chase Bank where B.S. was forced to reveal his pin number so money could be taken from his checking account. All the while, F.B. remained in the vehicle with a gun to his head. A reasonable person could believe that F.B. would both be released if money was removed from B.S.'s bank account; conversely, had no money been available, it was reasonable to believe that both victims would die.

In *State v. Hawthorne,* 15-0675, p. 7, n. 6 (La.App. 4 Cir. 8/10/16), 2016 WL 4211361 (*unpub.*), we stated:

> *See State v. Leger,* 2005-0011, p. 96 (La. 7/10/06), 936 So.2d 108, 173 (quoting *State v. Arnold,* 548 So.2d 920)) ("[T]he question and issue to be focused on is whether the D.F. sought to obtain something of value, be it sex or money or loss of simple human dignity, by playing upon the victim's fear and hope of eventual release in order to gain compliance with his demands.").

Here, something of value was taken from B.S. ("some other person"), which played on F.B.'s hopes and fears of eventual release dependent on B.S.'s

compliance with D.F.'s demands. Therefore, as to F.B., the State presented sufficient evidence to support the juvenile court's finding that D.F. was guilty of aggravated kidnapping. This assignment of error has no merit.

### ASSIGNMENT OF ERROR 1

D.F. next argues that the juvenile court erred when it sentenced him for the aggravated kidnapping of B.S. because it violated La. Ch.C. art. 897.1 (D). The statute states that juveniles in secure care for an adjudication for a violation of La. R.S. 14:44 [aggravated kidnapping], "shall be eligible for modification of the disposition after serving thirty-six months of the disposition." However, in this case, the judgment of disposition provided that, pursuant to "Article 897.1 for aggravated kidnapping, the Court cannot not modify the disposition of Juvenile Life." Clearly, the juvenile court erred.[2]

We, therefore, amend the dispositions for both counts of aggravated kidnapping to remove the restriction imposed by the juvenile court and add that D.F. is eligible for modification of the dispositions after 36 months. *See State in Interest of H.L.F.,* 97-2651, p. 6 (La.App. 4 Cir. 5/20/98), 713 So.2d 810, 813 (citation omitted) ("[w]here the defect in [disposition] does not involve the exercise of discretion, the [disposition] may be corrected on appeal by amendment rather than remand.").

Based on the foregoing, we affirm the disposition of aggravated kidnapping as to F.B. In addition, we amend the dispositions for both counts of aggravated kidnapping to remove the language that pursuant to "Article 897.1 for aggravated

---

[2] The State contends that D.F. did not object to the disposition at the time of sentencing and, therefore, did not preserve the issue on appeal. While we appreciate the State's position, we disagree. If D.F. has not raised the issue on appeal, we would have corrected the dispositions based on an error patent review. Therefore, the State's argument has not merit.

kidnapping, the Court cannot not modify the disposition of Juvenile Life," and

provide that D.F. is eligible for modification of the dispositions after 36 months.[9]

**AMENDED; AFFIRMED AS AMENDED.**