714 So.2d 28 (1998)
STATE of Louisiana, Appellee,
v.
John OVERBY, Appellant.
No. 30589-KA.
Court of Appeal of Louisiana, Second Circuit.
April 8, 1998.
*29 Amy C. Ellender, Louisiana Appellate Project, for Appellant.
Richard Ieyoub, Attorney General, William R. "Billy" Coenen, District Attorney, Penny Wise-Douciere, Assistant District Attorney, for Appellee.
Before HIGHTOWER, BROWN and GASKINS, JJ.
GASKINS, Judge.
The defendant, John Overby, was originally charged with aggravated kidnapping, a violation of La. R.S. 14:44. He pled guilty to second degree kidnapping, a violation of La. R.S. 14:44.1, and was sentenced to serve 40 years imprisonment at hard labor without benefit of probation, parole or suspension of sentence. The defendant appealed. We affirm the defendant's conviction and sentence.

FACTS
On or about August 9, 1996, the victim was traveling by bus from California to Tennessee. Near Dallas, Texas, the bus driver had her removed from the bus for smoking in the bathroom. A police officer gave her a ride to a truck stop in Terrell, Texas, so that she could obtain a ride back to Dallas to catch another bus.
At the truck stop, the victim came into contact with the defendant, a truck driver, who offered to take her to Tennessee. According to the victim, as she and the defendant crossed the bridge into Shreveport, *30 Louisiana, she informed the defendant that she was very sleepy, and the defendant told her to lie down in his sleeper and get a couple hours of rest. A short time later while she was in the sleeper of the truck, the defendant attacked her, putting a gun to her head and holding her by the hair while he yelled and screamed at her. The defendant continued holding the gun to the victim's head as he undressed her; she stated that she was led to believe she would be shot if she moved or spoke. The defendant then raped her. During a hearing on the defendant's motion to quash due to improper venue, an investigator for the District Attorney's office testified that the victim identified a location in Lincoln Parish as the place where the rape occurred.
After raping the victim, the defendant tied her up with plastic ties and left her in the rear of the truck. He drove for a while and then stopped again. He came back into the sleeper of the truck and removed the victim's clothes again. The defendant then put gray duct tape on her face, wrists and knees and proceeded to torture her by ripping the tape off and putting it back on as many as nine or ten times.
On the morning of August 10, 1996, the defendant stopped at the Pilot Travel Center in Rayville, Louisiana, which is located in Richland Parish. A truck stop employee reported that the defendant entered the store on two occasions. On the first visit, he purchased blue polyester rope. On the second visit, the defendant attempted to cash a "com-check" and purchase more rope; he appeared to be very nervous and agitated. While the defendant was away from the truck, the victim worked her hands out of the duct tape; she then cut the tape at her knees and ankles with a razor blade. After freeing herself, the victim, naked and hysterical, escaped from the truck, and someone gave her a blanket with which to cover herself. She informed an employee at the truck stop that she had been held hostage.
The authorities were alerted by the truck stop employee, who was able to provide them with the driver's license number of the assailant. A computer check determined that the license number was that of the defendant, John Overby. The defendant was seen fleeing the truck stop in his maroon-colored Peterbilt truck, traveling east on I-20. About 15 minutes later, a vehicle matching this description was stopped just before the Delhi exit on I-20 eastbound. The defendant's truck was searched; although no gun was located, a witness at the Pilot Travel Center had seen a gun in the defendant's possession.
Since the defendant's vehicle had been observed near the Bee Bayou exit, officers also searched this area for any evidence which might have been discarded. There the deputies found a blue bag belonging to the victim. Inside they found clothing, a horse bridle, blue nylon rope, a white bra, a pair of socks, a roll of gray duct tape, and several pieces of short duct tape.
When the defendant was questioned, he stated that he started talking to the "gal working the lot at Terrell" [the victim] and that she rode with him from Texas into Rayville, Louisiana. The defendant denied raping or kidnapping her; he claimed he paid her for sex.
The victim was taken to a hospital where a rape kit was performed. Sperm was detected on two of the items submitted in the rape kit. The victim was kept in the hospital overnight for observation. The next day she gave the police a statement and identified the defendant in a photographic line-up. She was also able to show the investigators the location in Lincoln Parish where the rape occurred.
The defendant was originally charged with aggravated kidnapping, a violation of La. R.S.14:44. On May 19, 1997, a hearing was held on the defendant's motion to quash due to improper venue; the court denied the motion, determining that Richland Parish was a proper venue. The next day, the state amended the charge to second degree kidnapping, a violation of La. R.S. 14:44.1, and the defendant pled guilty to the lesser charge. As there was no agreement as to sentencing, the court ordered a pre-sentence investigation (PSI) report.
At the defendant's sentencing, the trial court read extensively from the PSI report regarding the facts of the case, the defendant's *31 prior criminal history, and the defendant's social history. After considering all of the facts and circumstances of this case, the court sentenced the defendant to 40 years imprisonment at hard labor without benefit of probation, parole or suspension of sentence. The defendant's timely motion for reconsideration of the sentence was denied.
On appeal, the defendant raised three assignments of error. One assignment of error was specifically abandoned in brief. The remaining assignments contest the trial court's ruling on the motion to quash and the sentence imposed.

MOTION TO QUASH
The defendant contends that the trial court erred in finding that Richland Parish was a proper venue in which to prosecute him for the offense of aggravated kidnapping.

Law
Since venue is jurisdictional in criminal cases, a valid conviction can only be obtained in a court of proper venue. At the hearing on the motion to quash, the state submitted the testimony of Investigator John M. Thomas and argued that venue was proper under either La.C.Cr.P. art. 611 or 612. La.C.Cr.P. art. 611 provides, in pertinent part, as follows:
If acts constituting an offense or if the elements of an offense occurred in more than one place, in or out of the parish or state, the offense is deemed to have been committed in any parish in this state in which any such act or element occurred.
The state argued that venue was also proper under La.C.Cr.P. art. 612 which provides, in pertinent part, as follows:
If an offense is committed on a ... private vehicle while in transit in this state and the exact place of the offense in this state cannot be established, the offense is deemed to have been committed in any parish through or over which the ... other vehicle passed, and in which the crime could have been committed.
The issue of improper venue must be raised in advance of trial and shall be tried by the judge alone. La.C.Cr.P. art. 615. Venue is a jurisdictional matter and must be proven by the state by a preponderance of the evidence and decided by the court in advance of trial. La.C.Cr.P. art. 615. The defendant was initially charged with aggravated kidnapping, and the hearing on the motion to quash was held prior to the state amending the bill of indictment and the defendant pleading guilty to second degree kidnapping. Therefore, for venue to be proper under La.C.Cr.P. art. 611, the state had to prove by a preponderance of the evidence that at least one of the elements of aggravated kidnapping occurred in Richland Parish.
The crime of aggravated kidnapping is defined in La. R.S. 14:44 as follows:
Aggravated kidnapping is the doing of any of the following acts with the intent thereby to force the victim, or some other person, to give up anything of apparent present or prospective value, or to grant any advantage or immunity, in order to secure a release of the person under the offender's actual or apparent control:
(1) The forcible seizing and carrying of any person from one place to another; or
(2) The enticing or persuading of any person to go from one place to another; or
(3) The imprisoning or forcible secreting of any person.
Whoever commits the crime of aggravated kidnapping shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.
A careful review of the statute reveals that the elements of aggravated kidnapping are:
1. The forcible seizing and;
2. the carrying of any person from one place to another (the asportation element);
3. with the intent to force the victim, or some other person, to give up anything of apparent present or prospective value (the extortion element);
4. in order to secure the release of that person.
State v. Arnold, 548 So.2d 920 (La.1989).
Seizure of a victim with intent to commit rape constitutes intent to force the victim *32 to give up something of "apparent present or prospective value." State v. Arnold, supra; State v. Sonnier, 402 So.2d 650 (La.1981), cert. denied, 463 U.S. 1229,103 S.Ct. 3571, 77 L.Ed.2d 1412 (1983).
The relevant factor in applying the fourth element of aggravated kidnapping is whether the kidnapper intended to extort sexual gratification from the victim by playing upon the victim's hope for release, not whether the kidnapper explicitly communicated to the victim that performance of sexual acts would result in her release. State v. Arnold, supra; State v. Roblow, 623 So.2d 51 (La.App. 1st Cir.1993). This element requires an analysis of whether a reasonable person in the victim's place, given the totality of the circumstances, would believe that she would not be safely released unless she complied with the kidnapper's demands for sexual gratification. State v. Arnold, suprai.

Discussion
The gist of the defendant's argument is that the state failed to prove the fourth element, that he intended to release the victim upon the acquisition of the sexual intercourse, as demonstrated by the fact that the victim was not released upon performance of the sexual relations in Lincoln Parish. In support of this contention, the defense cited State v. Acevedo, 93-1474 (La.App. 4th Cir. 2/25/94), 633 So.2d 828, writ denied, 94-0602 (La.3/31/94), 635 So.2d 1103. However, we distinguish Acevedo, supra, in which there was no actual rape and the evidence of the defendant's sexually assaultive intent was deemed "ambiguous" by the majority of the appellate court panel.[1] In the instant case, the victim was in fact raped. Furthermore, we find that the evidence in the instant case of the defendant's intent to force the victim to comply with his sexual demands in hopes of obtaining her release is more akin to that in the Arnold case (where the victim was sexually assaulted by a knife-wielding attacker and ultimately stabbed in the neck) than to the evidence in Acevedo, supra.
In the instant case, the victim stated that the defendant, armed with a gun and two knives, conveyed to her during the rape that she would be killed if she tried to get away. Such a threat manifested the defendant's intent to force her to give in to his sexual demands with the hope of securing her safe release.
Furthermore, the state is only required to prove by a preponderance of the evidence that one element of the crime occurred in Richland Parish for venue to be proper in Richland Parish. See La.C.Cr.P. art. 611, comments (b) & (d); State v. Roblow, supra. One of the elements of the crime is the carrying of any person from one place to another and, as the statute states, "the imprisoning or forcible secreting of any person." La. R.S. 14:44. The evidence shows that following the rape in Lincoln Parish, the defendant bound the victim's wrists and ankles and forced her to stay in the sleeper part of the truck while he drove into Richland Parish. The victim escaped at a truck stop in Richland Parish. This evidence was sufficient for the court to conclude that the state had shown by a preponderance of the evidence that one element of the aggravated kidnapping had occurred in Richland Parish so that Richland was a proper venue under La.C.Cr.P. art. 611. Also, since the kidnapping occurred in a private vehicle in transit in this state, venue was proper under La. C.Cr.P. art. 612.
This assignment of error is meritless.

EXCESSIVE SENTENCE
The defendant urges that his sentence of 40 years at hard labor without benefit, the maximum allowable for the offense to which he pled guilty, was excessive. He also contends that the trial court failed to consider in mitigation that he accepted responsibility by pleading guilty.

Criteria of La.C.Cr.P. art. 894.1
To evaluate a sentence for excessiveness, an appellate court uses a two-step analysis. First, we examine whether the record demonstrates consideration of the criteria set forth in La.C.Cr.P. art. 894.1. State v. Smith, 433 So.2d 688 (La.1983). The trial *33 court is not required to list every aggravating and mitigating circumstance so long as the record reflects adequate consideration of the guidelines of the article. State v. Smith, supra; State v. Gene, 587 So.2d 18 (La.App. 2d Cir.1991), writ denied, 604 So.2d 993 (La. 1992). Important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981).
At the defendant's sentencing, the court read into the record the facts of the offense as set forth in the PSI report. The court also noted the defendant's prior criminal record. In June 1973, the defendant was charged with contributing to the delinquency of a minor, but the charge was later dropped. In February 1974, the defendant was charged with desertion, apparently pled guilty, and was sentenced to the Naval Shore Patrol in Memphis, Tennessee. In April 1979, the defendant was convicted of capital murder in Mississippi, and he was sentenced to life in prison. The defendant was released in December 1989 after serving less than 12 years of his sentence. Following his release, the defendant resided in Mississippi, Tennessee, and Louisiana. His parole was changed from supervised to unsupervised because of his occupation as a truck driver. Upon being notified of the defendant's arrest for the instant offense, the Mississippi authorities filed a detainer with the local sheriff's office for parole violation.
The trial court also reviewed the defendant's social history. The 43-year-old defendant had been divorced four times and had three children, only one of whom was still a minor. Although he dropped out of school at age 15 after completing the eighth grade, he obtained his GED while in prison in Mississippi. While he denied use of alcohol, the defendant admitted methamphetamine use.
The court reviewed the statutory factors indicating that imprisonment was appropriate, including that there was an undue risk that, during the period of a suspended sentence or probation, the defendant would commit another crime; that the defendant was in need of correctional treatment or a custodial environment that could be provided most effectively by his commitment to an institution; and that a lesser sentence would deprecate the seriousness of the defendant's crime. La.C.Cr.P. art. 894.1(A).
The court then articulated the factors it had considered under La.C.Cr.P. art. 894.1(B). One of the factors was the defendant's conduct during the commission of the offense manifested deliberate cruelty to the victim. In support of this finding, the court stated that the defendant held a gun to the victim's head while he undressed and raped her. After the attack, the defendant kept the victim in the rear of the truck tied up with plastic ties. Later the defendant again removed the victim's clothes, taped her face, wrists and legs with gray duct tape and proceeded to rip the tape off and replace it multiple times. Another factor which the court considered was the defendant's use of threats of or actual violence in the commission of the offense. In support of this finding, the court noted that the defendant attacked the victim, holding her by the hair and pointing a gun at her head, indicating that she would be shot if she moved or spoke. A third factor which the court took into consideration in determining sentence was that the offense involved multiple incidents for which separate sentences were not imposed. The court stated its belief that the defendant was, in fact, also guilty of the offense of rape, for which he was never charged.
Our review demonstrates that the trial court carefully and painstakingly considered the factors enumerated in La.C.Cr.P. art. 894.1 in fashioning an appropriate sentence for this defendant.

Constitutional factors
Next, we must determine if the sentence is unconstitutionally excessive. Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant.
A sentence violates La. Const. art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more *34 than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate when the crime and punishment, considered in light of the harm done to society, shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La. 1985); State v. Strange, 28,466 (La.App.2d Cir. 6/26/96), 677 So.2d 587; State v. Tuttle, 26,307 (La.App.2d Cir. 9/21/94), 643 So.2d 304.
A trial court has wide discretion to sentence within the statutory limits. However, even a sentence within statutorily authorized limits can be excessive. State v. Sepulvado, 367 So.2d 762 (La.1979). Maximum sentences are reserved for the worst offenders. State v. Quebedeaux, 424 So.2d 1009 (La.1982), appeal after remand, 446 So.2d 1210 (La.1984); State v. Anderson, 574 So.2d 468 (La.App. 2d Cir.1991). Absent a showing of manifest abuse of discretion, this court does not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La. 1983); State v. Hudgins, 519 So.2d 400 (La. App. 2d Cir.1988), writ denied, 521 So.2d 1143 (La.1988); State v. Madison, 535 So.2d 1024 (La.App. 2d Cir.1988); State v. Thompson, 25,583 (La.App.2d Cir. 1/19/94), 631 So.2d 555.
The statute governing the sentence upon conviction of second degree kidnapping, La. R.S. 14:44.1(C), provides as follows:
Whoever commits the crime of second degree kidnapping shall be imprisoned at hard labor for not less than five nor more than forty years. At least two years of the sentence imposed shall be without benefit of parole, probation or suspension of sentence.
The court sentenced the defendant to 40 years imprisonment at hard labor without benefit of parole, probation or suspension of sentence. As previously noted, the PSI report reflected that the defendant had a previous felony conviction for capital murder for which he was sentenced to life in prison. Prior to parole, he served 11 years and 5 months of this sentence.
By pleading guilty to the amended charge of second degree kidnapping, the defendant received a substantial benefit. Had the defendant been convicted of the original aggravated kidnapping charge, he would have faced a mandatory sentence of life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. La. R.S. 14:44. In cases where the defendant has pled guilty to an offense which does not adequately describe his criminal conduct, the benefit received by a plea bargain agreement and the attendant reduction in potential exposure to criminal penalty is a proper sentencing consideration. State v. Anderson, supra; State v. Griffin, 455 So.2d 681 (La. App. 2d Cir.1984), writ denied, 458 So.2d 128 (La.1984). The evidence shows that the defendant was actually guilty of aggravated kidnapping, the offense for which he was originally charged.
The defendant, in brief, argues that his guilty plea evidenced that he accepted responsibility for his conduct and this should be considered a mitigating factor in his sentencing.[2] However, in pleading guilty, the defendant avoided the possibility of a sentence of life imprisonment and limited his sentencing exposure to 40 years imprisonment. Since a charge of second degree kidnapping did not adequately describe the extent of the defendant's criminal conduct because the evidence showed he could have been convicted of aggravated kidnapping as well as charged with and convicted of rapethe defendant already received a substantial benefit in being allowed to plead guilty to this lesser offense.
The defendant's sentence of 40 years imprisonment at hard labor without benefit of parole, probation or suspension of sentence does not shock the sense of justice nor can it be said that the trial court abused its discretion in the sentence it imposed. In view of the benefit the defendant received by pleading *35 guilty to a lesser charge and thus avoiding a possible sentence of life imprisonment; the defendant's prior criminal history including a conviction for capital murder; the fact that the defendant was not charged with rape; the use of weapons and violence in the commission of the offense; and the deliberate cruelty the defendant demonstrated toward his victim, this defendant could be considered the worst type of offender deserving of the maximum sentence.
This assignment of error is without merit.

CONCLUSION
The defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] However, we note a strong dissent authored by Judge Byrnes.
[2] When given an opportunity to address the court at sentencing, the defendantwho had claimed to the police at the time of his arrest that the victim was a prostituteasserted there was "a lot in [the victim's] story that is questionable." This does not appear to be the action of a person accepting responsibility for his criminal conduct.