L STEWART, J.
The defendant, Gregory Norwood (“Norwood”), was charged with attempted forcible rape and aggravated oral sexual battery. After a bench trial, Norwood was found not guilty of attempted forcible rape, but was convicted of aggravated oral sexual battery. Norwood, by pro se brief and through his attorney, makes several assignments of error regarding the sufficiency of the evidence in his conviction. However, finding no merit in the defendant’s contentions, we affirm his conviction and sentence.
FACTS
On March 9, 1999, at approximately 6:00 p.m., the Shreveport Police responded to a call at Greenway Square Apartments from M.V. who claimed that Norwood attempted to rape and perform oral sex upon her. Prior to the incident on March 9, M.V. and *616 Norwood had known each other for six years. Norwood would frequently enlist M.V.’s services for various painting jobs that he would get. On the day of the incident, Norwood had gone to Marshall, Texas to pick up M.V. from her boyfriend’s house to bring her back to Shreveport to go on a job that morning. When they got back to Shreveport, the painting job fell through, so they went to I HOP for breakfast, and then back to Norwood’s apartment to change clothes before going to one of the gambling boats. M.V. had brought $240 for gambling. After M.V. spoke briefly to her boyfriend by phone, Nor-wood began to attack and beat her in an attempt to force her to have sex with him. Norwood told M.V. that he had loved her for six years, but she hadn’t given him any attention. He also cursed M.V. and continued to slap her. During the struggle, Norwood pulled M.V.’s red panties and black girdle down and off, and later pulled her slip-on dress over her head and off her | ¡¿body. Her clothing was not torn. He held her down on a mattress that he kept on his living room floor. M.V. was on her back, holding her legs together, but the defendant forced his mouth between her legs and touched his mouth or tongue to her genitalia. M.V. pleaded with Norwood to stop, and she screamed. However, he told her the neighbors would not hear her, so she stopped screaming. After struggling with her for about two or three hours, Norwood threatened to kill M.V. and himself.
Fearing for her life, M.V. begged to telephone her children. Norwood relented and allowed her to make the phone call. M.V. talked to her children and her sister, and asked them to pray. When she finished the call, Norwood began beating her again, mostly on the head. M.V. wore her hair in thick braids with extensions, which cushioned her head from the blows. Nor-wood also bit M.V. on her back. He pushed her into the wall, and her head hit the wall on the left side of the living room, behind the mattress. At one point she blacked out, and was weak and dizzy during the struggle. Norwood also demanded that M.V. perform oral sex on him, pushing her head toward his penis, but she refused.
M.V. then saw a razor blade on the floor next to the mattress and was later able to grab it with her left hand. Norwood, suspecting that she had something in her left hand, bit that hand, but M.V. was able to switch the razor blade to her right hand. Norwood then punched M.V. and pushed her onto a swivel chair. When Norwood approached M.V. again, she cut him across his stomach with the razor blade. M.V. escaped Norwood’s apartment and ran naked to the next door neighbors’ apartment for help at about 5:30 or 6:00 p.m.
laThe neighbors, Brandon Morris and Donzell Russell, let her inside their apartment and called the police. M.V. was taken to a Shreveport hospital by ambulance. She left her purse containing the $240.00 in Norwood’s apartment. In addition to the clothing Norwood removed from her during the struggle, M.V. also left her paint-stained jogging suit in the defendant’s apartment. M.V. stated that she did not receive any money from the defendant on the day of the crime. She also asserted that Norwood did not offer to pay her for oral sex.
Officer L.R. Hill and Detectives W.B. Johnson and Randy L. Benton, searched Norwood’s apartment later that evening pursuant to a search warrant. The apartment appeared to have been the scene of a struggle. They observed random blood splatters, some underwear on the mattress on the living room floor, and a dress on the floor beside the mattress. The telephone was disconnected and the handset was *617 missing. Also, a lamp shade was crooked. Two purses containing M.V.’s identification were also found in the apartment, one- of which appeared to have been emptied out and thrown behind the couch. A search warrant return was left on the kitchen table of the apartment.
At about 8:30 a.m. on the morning after the crime, Norwood telephoned Detective Benton, stating that he needed to explain what happened. He arrived at the station about 30 minutes later. Detective Benton waited until Detective Johnson arrived to speak to Norwood. Norwood waited voluntarily and was unrestrained. When Detective Johnson arrived, he advised him of his Miranda rights, which the defendant Jjindicated that he understood and waived. Norwood also signed a card that set forth those rights.
Norwood then voluntarily gave a recorded statement to Detectives Johnson and Benton. Detective Johnson observed that the cut on the defendant’s side was long and deep and needed medical attention. Norwood also had a cut on his wrist and arm. Detective Johnson admitted at trial having confused Marshall and Longview as the site where Norwood picked up M.V. in his report and in an interview with the defendant. However, Norwood corrected him during the interview.
In his recorded statement, Norwood corroborated that he and M.V. were very good friends, and that she occasionally worked for him painting houses. He also stated that she was very attractive, and that she knew that he was attracted to her physically. He stated that he had been “after her” for a long time. However, when he first met her she was married, and then later in their friendship, she was involved with different boyfriends. Nor-wood stated that she had declined his sexual advances because of her involvement with these other men.
In the recorded statement, the defendant corroborated that he picked M.V. up in Marshall on the day of the crime, and that she was dressed to paint, but carried her clothes to go to the casino in a bag. The defendant also corroborated that they first had breakfast at I-HOP. The defendant stated that they then went to his apartment. He corroborated that M.V. called her boyfriend from his apartment. However, he .asserted that M.V. was desperate for money, and that he offered her $50.00 to have oral sex on the day of the crime, and that she had agreed. Norwood claimed to have Ispaid her $50.00 in advance, and that she changed into her dress when they got to his apartment.
Norwood then asserted that M.V. joined him on the mattress for about five minutes of foreplay. He asserted that he drank alcohol and smoked marijuana that day, and couldn’t remember whether he took her clothes off, or whether she took her own clothes off. He contended that she allowed him to perform oral sex on her, and that she performed oral sex on him for about 60 to 90 seconds. He asserted that M.V. then demanded more money than was originally agreed, on to continue to perform oral sex on him. When he refused, M.V. became mad and cut him with a razor blade. Norwood admitted hitting her hard on the head several times and biting her on her hand and shoulder to repel her attack. He denied getting mad at M.V., but stated that he simply opened the apartment door for her, told her to have a nice day, and ordered her out of his apartment. Norwood stated that M.V. walked out the door naked. He then grabbed a shirt and got into his truck to buy some gauze at Wal Mart. He stated that he was drunk, and spent the night in his truck.
Michelle Gaines, a forensic DNA analyst with the North Louisiana Crime Lab, ana *618 lyzed the samples taken from M.V. and the defendant, and compared them to the evi-dentiary samples from the rape kit. She found that the DNA profile for fingernail scraping taken from M.V.’s left hand, which was included in the rape kit, was consistent with the reference samples taken from M.V. The bite mark swab was consistent with a mixture of M.V. and a male individual. The defendant could not be excluded as the male contributor in that mixture. Ms. Gaines stated that the bite mark swab [¿was 32 billion times more likely to be a mixture of the DNA from M.V. and the defendant than of M.V. and another unknown African American male. The vaginal swab was tested for semen only. The result of that test was negative.
Norwood did not testify at trial, and did not call any witnesses on his behalf. Two exhibits were introduced into evidence at trial by the defendant. The first was the crime lab transfer sheet for the vaginal swabs taken from M.V.’s vaginal area. The second was a photograph depicting the interior of the his apartment, with the wall hangings undisturbed.
After recapping the evidence, and reviewing the credibility of M.V., in particular, the trial court stated that the crime was “not one of force,” but one of lack of consent. The trial court then found that the state failed to prove all of the elements of the crime of attempted forcible rape, and found Norwood not guilty of that charge. However, the court found that the state proved all of the elements of aggravated oral sexual battery, and found the him guilty.
DISCUSSION
Through his attorney and by pro se brief, Norwood alleges over thirteen assignments of error which can be placed in three categories: sufficiency of evidence, due process, and excessive sentencing.

Sufficiency of Evidence

The standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La. App.2d Cir. 9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
La.C.Cr.P. art. 821 provides that a motion for post verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty. This is a question of legal sufficiency. State v. Combs, 600 So.2d 751 (La.App.2d Cir.1992), writ denied, 604 So.2d 973 (La.1992).
La.C.Cr.P. art. 851(1) provides that the court shall grant a motion for new trial whenever the verdict is contrary to the law and the evidence, i.e. that the evidence was *619 insufficient to sustain the conviction. A motion for new trial presents only the issue of the weight of the evidence. Under this article the trial judge has wide discretion to determine the weight of the evidence. The refusal to grant such a motion is not subject to appellate review, except for error of law. State v. Mitchell, 26,070 (La.App.2d Cir.6/22/94), 639 So.2d 391, writ denied, 94-1981 (La.12/16/94), 648 So.2d 387, citing Tibbs v. Florida, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982); State v. Thomas, 609 So.2d 1078 (La. App.2d Cir.1992), writ denied, 617 So.2d 905 (1993); State v. Robinson, 624 So.2d 1260 (La.App.2d Cir.1993), writ denied, 93-2897 (La.2/11/94), 634 So.2d 372; State v. Korman, 439 So.2d 1099 (La.App.lst Cir.1983). The standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
Under La. R.S. 14:43.4, aggravated oral sexual battery is defined, in pertinent part, as follows:
A. Aggravated oral sexual battery is an oral sexual battery committed when the intentional touching of the genitals or anus of one person and the mouth or tongue of another is deemed to be without the lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) When the victim resists the act to the utmost, but whose resistance is overcome by force.
(2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by the apparent power of execution.
Norwood, by numerous assignments, argues that the evidence adduced at trial was insufficient to convict him of aggravated oral sexual battery. | gHowever, an examination of the evidence demonstrates that a rational trier of fact could have found that the state met its burden of proof. Norwood and M.V. had known each other for about six years and had a “brother/sister relationship.” On the morning of the incident, M.V. testified that Norwood stated to her that he was in love with her and felt that she had never given him the attention he deserved. Nor-wood told her that if she would have sex with him, he would give her anything she wanted. When she refused, he began beating her. After taking her clothes off, Norwood held M.V. down and began performing oral sex on her despite her attempts to keep her legs closed. Throughout the ordeal Norwood bit, slapped, and threatened to kill M.V. Critical to this case is the fact that after cutting Norwood, M.V. ran stark naked from his apartment to the neighbors screaming for help. Nor-wood’s explanation for the 5-6 hour conflict was that he offered M.V. $50 for oral sex and that after she complied for about three minutes, she stopped and demanded $100, and attacked him when he refused. The only testimony in this case is that of the victim and the defendant. The trial judge found M.V.’s testimony to be credible. The review of this court does not extend to credibility determinations. The trial judge said that this issue in this case was not about “force,” but “consent.” Hence, a finding of force is not necessary if it is determined that the act was deemed without victim’s consent because of the latter circumstance — threats of great and immediate bodily harm, accompanied by *620 apparent power of execution. The evidence regarding this circumstance was discussed herein above and was found to have been sufficient.
|inIt should also be noted that the trial court’s finding of lack of force was made prior to finding the defendant not guilty of attempted forcible rape. Thereafter, the trial court found all of the elements necessary to convict the defendant of aggravated oral sexual battery. Therefore, the trial court’s statement could be explained as having been made solely regarding the attempted forcible rape charge. Thus, viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found that Norwood touched the genitalia of M.V. with his mouth or tongue against her will by force despite her utmost resistance. Each assignment related to the sufficiency of evidence is without merit.

Due Process

By pro se brief, Norwood contends that he was denied due process because the state did not charge him with attempted aggravated rape instead of oral sexual battery which is not a responsive verdict to aggravated rape. Additionally, he asserts that La. R.S 14:43.4 is unconstitutional. This assignment is simply without merit. The bill of information shows that Nor-wood was charged with one count of attempted forcible rape and one count of aggravated oral sexual battery. After careful review of the record, we find that the facts presented at trial support the district attorney’s decision to prosecute Norwood under this statute. The district attorney has the unfettered, statutorily protected discretion to decide who, when and how to prosecute an accused in his district. La.C.Cr.P. art. 61. State v. Stephenson, 33,662 (La.App.2d Cir.8/23/00), 766 So.2d 642.
La. R.S. 14:43.4 defines aggravated oral sexual battery as an oral sexual battery committed when the intentional touching of the genitals or l^anus of one person and the mouth or tongue of another is deemed to be without the lawful consent of M.V. because it is committed under “any one or more of the following circumstances,” and a listing of six situations which constitute aggravated oral sexual battery.
Statutes are presumed to be valid; wherever possible, the constitutionality of a statute should be upheld. State v. Brown, 94-1290 (La.1/17/95), 648 So.2d 872; State v. Brenner, 486 So.2d 101 (La.1986); State v. Griffin, 495 So.2d 1306 (La.1986); State v. Flores, 27,736 (La.App.2d Cir.2/28/96), 669 So.2d 646. Because a state statute is presumed constitutional, the party challenging the statute bears the burden of proving its unconstitutionality.
Criminal laws are not expanded beyond their common meaning. La. R.S. 14:3. State v. Pickens, 98-1443 (La.App. 3d Cir.4/28/99), 741 So.2d 696, writ denied, 99-1577 (La.11/5/99), 751 So.2d 232. The criminal code itself requires that penal statutes be strictly construed; that nothing is a crime which is not clearly and unmistakably made a crime; and that statutes be given a genuine construction according to the fair import of their words, taken in their usual sense, in context, and with reference to the purpose of the provision. La. R.S. 14:3, 7; State in Interest of J.A.V., 558 So.2d 214 (La.1990); State v. Union Tank Car Co., 439 So.2d 377 (La.1983); State v. Broom, 439 So.2d 357 (La.1983) (on original hearing). Also see: State v. Blackwell, 32-477 (La.App.2d Cir.10/27/99), 746 So.2d 205.
La. R.S. 14:43.4 clearly lists six different circumstances which, either alone or together, constitute the crime aggravated oral sexual battery, when coupled with the circumstances set forth in subsection A. The fair import of Lathe words, taken in their usual sense, in context, does not re *621 quire that all of the six listed circumstances be proved as separate elements of the crime, as the defendant suggests. La. R.S. 14:3, 7; State in Interest of J.A.V., supra; State v. Union Tank Car Co., supra; State v. Broom, supra. Norwood’s argument that proof was not required of all of the elements of the crime is clearly based on an incorrect premise. Consequently, his argument that his constitutional rights therefore were violated is logically without merit. This assignment of error is therefore without merit.

Excessive Sentence

Norwood was sentenced to four and one half years (4/6) hard labor, without benefit of probation, parole, or suspension of sentence. A sentence violates La. Const, art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Whitney, 33,800 (La.App.2d Cir.11/15/00), 772 So.2d 945. A sentence is considered grossly disproportionate when the crime and punishment, considered in light of the harm done to society, shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Overby, 30,589 (La.App.2d Cir.4/8/98), 714 So.2d 28; State v. Strange, 28,466 (La.App.2d Cir.6/26/96), 677 So.2d 587; State v. Tuttle, 26,307 (La.App.2d Cir.9/21/94), 643 So.2d 304.
A trial court has wide discretion to sentence within the statutory limits. However, even a sentence within statutorily authorized limits can be excessive. State v. Sepulvado, 367 So.2d 762 (La.1979). Maximum sentences are reserved for the worst offenders. State v. Quebedeaux, 424 So.2d 1009 (La.1982), appeal after remand, 446 So.2d 1210 (La.1984); State v. Overby, supra; State v. Anderson, 574 So.2d 468 (La.App. 2d Cir.1991). Absent a showing of manifest abuse of discretion, this court does not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La.1983); State v. Overby, supra; State v. Hudgins, 519 So.2d 400 (La.App. 2d Cir.), writ denied, 521 So.2d 1143 (La.1988); State v. Madison, 535 So.2d 1024 (La.App. 2d Cir.1988); State v. Thompson, 25,583 (La.App.2d Cir.1/19/94), 631 So.2d 555.
A review of the record indicated that the court considered a wide range of factors in sentencing the defendant. The court viewed all of the information submitted by defense counsel. The judge also noted the defendant’s lack of criminal history. Additionally, Norwood was given an opportunity to make an extensive statement in open court.
La. R.S. 14:43.4(C) sets a sentencing range for oral sexual battery of not more than twenty (20) years, with or without hard labor, without benefit of parole, or suspension of sentence. A sentence of 4/6 years can hardly be considered excessive given the aggravating nature of this crime and the possible range of sentence. This assignment is without merit.
CONCLUSION
The evidence demonstrates that a rational trier of fact could have found that the state met its burden of proof beyond reasonable doubt, and that Norwood was guilty of aggravated oral sexual battery. Thus, his conviction and sentence are affirmed.
AFFIRMED.
APPLICATION FOR REHEARING
Before NORRIS, C.J., WILLIAMS, STEWART, GASKINS, AND KOSTELKA, JJ.
Rehearing denied.