COX, J.
This criminal appeal arises from the Fifth Judicial District Court, West Carroll Parish, Louisiana. These crimes were committed in Franklin Parish. A pretrial motion to change venue was granted and the case was transferred to West Carroll Parish for trial. A unanimous jury convicted Kevin Q. Mathis of the aggravated kidnapping and attempted first degree murder of Kelli Longoria and possession of a firearm by a convicted felon. Mathis was sentenced to life imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence on the aggravated kidnapping conviction; 50 years' imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence on the attempted first degree murder conviction; and 10 years' imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence on the possession of a firearm by a convicted felon conviction. The sentences were ordered to be served concurrently. Mathis's motion for new trial was denied and this appeal followed. For the following reasons, we affirm Mathis's convictions and sentences.
FACTS
On July 16, 2016, Kelli Longoria stopped at the U-Pak-It/Citgo convenience store in Winnsboro, Louisiana, to get a lemonade on her way to a 7:00 a.m. meeting at her family's hardware store. Kelli was driving a dark-colored GMC SUV. Surveillance video introduced at trial shows Kelli purchase a lemonade with a blue debit card from Winnsboro Bank, exit the store, and get into her vehicle. Kelli stated a black male approached her and asked her for a ride to the hospital. Kelli agreed to give the man a ride, but he stated that he would drive. Kelli told the man that she could drive, and the man responded, "I have a gun, move over, I'm driving." Kelli testified that she crawled to the passenger side of her vehicle and the man drove them away from the convenience store.
The surveillance video also shows a black male enter and leave the store, look around, and sit/lean on a pole outside the store. A still shot taken from the video shows a handgun-shaped bulge in the man's right pant pocket. The man is wearing a dark shirt and long, baggy khaki shorts. The same man is seen on the video approaching Kelli's driver side door, the door opens, the man moves toward the open door and disappears off the screen, and then the door closes. He is not seen again outside the vehicle.
Kelli testified that when the two left the parking lot, she noticed that the man passed several turns that would have taken *617 them to the hospital. During the drive, the man showed her the gun and said, "Hey, I told you I had this, here it is." Kelli testified that when he turned toward the cemetery, she knew he was not going to the hospital. Once in the cemetery, she stated that the man backed her SUV into some trees and brush and then took her debit card and phone. Kelli testified that the last thing she remembered was crouching down on the floorboard with the gun pointed at her. She described the events as follows:
[Kelli's cell phone] kept going off and he said "give me your phone." And I was like "well, I'm not answering anything. Why do you need it?" and he said "just give me your phone." And so I gave it to him because I mean I didn't want him to kill me. And so I gave him my phone and then he did the same thing, he was like "give me your money" I said "I don't carry cash on me but I have a debit card" and he said "okay, give me your debit card" and so I gave it to him and then he was like "what's the pin number?" And so I wrote it down for him and he had that on a piece of paper and my debit card.
Kelli testified that the next thing she remembered was waking up in the rehabilitation facility in Jackson, Mississippi. She confirmed that the man who approached her at the convenience store is the same man who abducted her and shot her. Kelli was not asked to identify Mathis as her assailant in court or before trial in a photographic lineup.
Timothy Singleton, a grave digger in Winnsboro, testified that he was in the cemetery that morning to dig a grave. Mr. Singleton stated that, for a reason he could not explain, he turned a different direction than usual while driving in the cemetery and observed a dark-colored SUV backed into the trees. The passenger door was open and he saw a body "hanging out." Mr. Singleton called his boss, Yolandes Davis, who told Mr. Singleton to call 911, which he did. Mr. Davis also testified and corroborated the presence of the vehicle and the body.
Investigating officers testified regarding the report of a suspicious, abandoned vehicle in the Gethsemane Cemetery with an injured white female inside. Upon arrival, officers found the SUV with Kelli in the passenger side, partially hanging out of the vehicle. The lemonade Kelli purchased was unopened in the cup holder and the crime scene photographs show blood spatter throughout the vehicle. Deputy Sheriff Jeff Wright was a responding officer and testified that Kelli suffered a trauma to the forehead, but officers could not tell the cause due to the amount of blood and the fact that the blood had already started coagulating and clotting.
Deputy Wright stated that although Kelli could not speak, she was able to hand gesture to officers that she had been shot. Kelli was ultimately transported to Jackson, Mississippi, for treatment. It was determined that Kelli suffered a gunshot to her head and doctors advised the family that she would likely not survive through the night. However, Kelli progressed and, after months of rehabilitation, relearned how to speak and feed herself.
Trooper Scott Brown, of the Louisiana State Police, testified regarding the crime scene investigation and identified the black male seen on the surveillance video as the defendant, Kevin Mathis. Trooper Brown advised that there was no DNA evidence or fingerprint evidence from the crime scene. He explained that fingerprint powder destroys DNA so instead of fingerprinting, he opted for DNA testing, which was inconclusive. Trooper Brown pointed out that by the time Mathis was arrested, he had taken a bath and changed clothes, *618 ensuring that there would be no DNA evidence on his person. Trooper Brown stated that the crime lab does not perform gun residue testing because it is unreliable.
Ten days after the offense, a cell phone and case were located beside a path near the cemetery. The case had been removed and the phone destroyed. The pieces of the case were scattered near a ditch and the phone had been tossed into a culvert. Officers concluded it was Kelli's cell phone because it matched the phone Kelli was carrying in the surveillance video from the convenience store. Trooper Brown testified that because it had rained before the phone and case were found, there were no recoverable fingerprints or DNA evidence.
Franklin Parish Sheriff Kevin Cobb also testified that during the investigation, on the morning of the offense, the black male seen on the surveillance video was identified as Mathis. Sheriff Cobb made an in-court identification of Mathis as the person seen on the surveillance video. Sheriff Cobb described Mathis's behavior at the convenience store as "panning," or looking for an opportunity. He testified that the surveillance video showed Mathis enter and leave the store. When Kelli walked past him, Mathis put his hand in his pocket where the handgun-shaped object was seen. He stated that the video shows Mathis followed Kelli to her vehicle. After Kelli entered her vehicle and shut the door, Mathis approached the vehicle and "at that point[,] Mr. Mathis enters her vehicle." Sheriff Cobb stated that two witnesses, Torquill Boley and Lakeithrick McMillan, came forward that morning with information possibly linking Mathis to the crime. Sheriff Cobb testified that, based on the foregoing information, Mathis became a person of interest and a BOLO was issued for his arrest.
Officer Will Pearce, of the Winnsboro Police Department, testified that he was riding in a patrol car on the morning of the shooting and kidnapping when he observed Mathis. Officer Pearce knew Mathis before this offense. He exited the patrol car and Mathis fled. Officer Pearce caught Mathis, ordered him to the ground, and took him into custody.
Torquill Boley testified that he has known Mathis for "some years" because they live on the same street. Boley stated that he was approached by Mathis early in the morning of July 16, 2016, and the two rode together to Boley's house. Boley testified that Mathis asked him if he had any nine millimeter bullets. Boley told Mathis he did not have any bullets. He stated that Mathis then "flagged" down Lakeithrick McMillan and was gone. Boley identified Mathis in court as the man who asked him for the bullets.
Lakeithrick McMillan testified that he saw Mathis at Boley's house early that morning. He later saw Mathis on Gum Street and gave him a ride. Mathis asked McMillan to take him to the bank and told him that he had his Uncle Bobby's debit card and needed to use it. McMillan testified that Mathis told him that McMillan would have to pull up to the bank and Mathis would reach out the window. Mathis told him he would have to hide his face to use the card. On cross-examination, McMillan stated that Mathis did not seem nervous and he did not see a gun or any blood on Mathis. McMillan testified that he did see Mathis with a blue debit card, but that he did not take Mathis to the bank. Instead, he dropped Mathis off at his mother's house.
Through the testimony of Deputy Sheriff Todd Roberts, enlarged Google Earth photographs were introduced into evidence, depicting the location of Kelli's vehicle and the probable route taken by *619 Mathis after fleeing the scene. The route follows a path out of the cemetery, past where the pieces of Kelli's cell phone were found, and ends where Boley testified he encountered Mathis.
Finally, Probation Officer Edward Esters testified regarding Mathis's August 3, 2012, conviction for simple burglary, forming the basis for the possession of a firearm by a convicted felon charge.
The State rested and the only witness called by the defense was Trooper Scott Brown. Trooper Brown returned to the stand, again testifying that there was no DNA or fingerprint evidence placing Mathis in Kelli's vehicle. Trooper Brown further testified that a search warrant was executed at Mathis's mother's home in the late morning hours of July 16, 2016. Clothing matching that worn by Mathis in the surveillance video-a dark shirt and khaki shorts-were found in the washing machine. A photograph of the clothes in the washing machine was introduced into evidence. Trooper Brown confirmed that the clothing appeared to be the same as the clothes worn by Mathis in the video.
Following closing arguments, the trial court read the jury charge, which instructed the jury on aggravated kidnapping as follows:
Aggravated kidnapping is the forcible seizing and carrying of any person from one place to another with the intent to force that person or another person to give anything of apparent, present, or prospective value.
* * *
Thus in order to convict the defendant of aggravated kidnapping you must find that the defendant forcibly seized Kelli Longoria and carried her from one place to another or the defendant imprisoned or secreted her and that the defendant did so with the specific intent to force Kelli Longoria or some other person to give up anything of apparent, present or prospective value.
During deliberations, the jury presented a question to the trial court concerning the definition of Count One, aggravated kidnapping, and the distinction between aggravated kidnapping and second degree kidnapping. The trial court responded to the question as follows:
Certainly a reasonable question. What I'm going to do is read you a synopsis of the definition of the two crimes. I'm reading from the definition in the Louisiana Criminal Code.... There are technical differences so I'm going to read slowly, listen carefully. Aggravated kidnapping is the forcible seizing and carrying of any person from one place to another or the imprisoning or forcible secreting of any person with the intent thereby to force the victim or some other person to give up something of apparent, present, or prospective value or to grant any advantage or immunity in order to secure a release of the person under the offender's actual or apparent control. Do you understand? All right. Now I'm going to read second degree kidnapping. Second degree kidnapping is the forcible seizing and carrying of another person from one place to another or the enticing or persuading of any person to go from one place to another or the imprisoning or forcible secreting of any person wherein the victim is physically injured or sexually abused. That is the two definitions. The first was aggravated kidnapping, the second was second degree kidnapping. If you have further questions write them down and we'll try to answer them.
The jury returned a verdict of guilty on all three charges. Mathis filed a motion for new trial, which was denied. After waiving *620 sentencing delays, Mathis was sentenced by the trial court. This appeal followed.
DISCUSSION
Sufficiency of the Evidence and New Trial
Mathis's first, third, and fourth assignments of error will be discussed together because they involve the sufficiency of the evidence and denial of a new trial. He argues the State failed to sufficiently prove he was the person who kidnapped and shot the victim, as well as every element necessary for a conviction of aggravated kidnapping. He further argues that because the State failed to sufficiently prove its case, the trial court should have granted his motion for new trial.
Mathis argues that there was no identification of him as the person who kidnapped and shot Kelli. He notes that there was no photographic lineup and Kelli did not identify him at trial. Mathis points to the lack of physical or forensic evidence, including DNA and fingerprints, and notes that when he was arrested, he did not have possession of Kelli's phone, debit card, or a gun. He also asserts that the police did not attempt to "ping" his phone for his location and never located the gun involved in this offense. Mathis submits that the State's case was based on "tenuous circumstantial evidence" and that the State failed to exclude every reasonable hypothesis of his innocence. For these reasons, Mathis argues his conviction for aggravated kidnapping should be reversed and the trial court erred in denying his motion for new trial.
The State argues that the evidence presented supports the convictions and establishes that Mathis was the abductor/assailant. The State notes Kelli's testimony of the events on the morning of July 16, 2016, and her consistent testimony that the man who approached her at the convenience store was the same man who abducted her and shot her. The surveillance video shows Kelli and Mathis at the convenience store and Mathis is seen following Kelli to her vehicle. Trooper Brown and Sheriff Cobb both testified that the man in the surveillance video is Mathis.
When sufficiency of the evidence and one or more other trial errors are raised on appeal, the reviewing court should first determine sufficiency of the evidence. La. C. Cr. P. art. 821. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal if a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proven beyond a reasonable doubt. Hudson v. Louisiana , 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981) ; Jackson v. Virginia , 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ; State v. Dennis , 46,471 (La. App. 2 Cir. 9/21/11), 72 So.3d 968, writ denied , 11-2365 (La. 5/18/12), 89 So.3d 1189.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the case in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson , supra ; State v. Tate , 01-1658 (La. 5/20/03), 851 So.2d 921, cert. denied , 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004) ; State v. Steines , 51,698 (La. App. 2 Cir. 11/15/17), 245 So.3d 224, writ denied , 17-2174 (La. 10/8/18), 253 So.3d 797. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. Steines, supra.
The appellate court does not assess the credibility of witnesses or reweigh *621 the evidence. State v. Smith , 94-3116 (La. 10/16/95), 661 So.2d 442 ; State v. Dale , 50,195 (La. App. 2 Cir. 11/18/15), 180 So.3d 528, writ denied , 15-2291 (La. 4/4/16), 190 So.3d 1203. A reviewing court affords great deference to a trial court's decision to accept or reject the testimony of a witness in whole or in part. Steines, supra .
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Francis , 51,048 (La. App. 2 Cir. 1/11/17), 213 So.3d 1213. The testimony of a victim alone is sufficient to convict a defendant. State v. Lambert , 52,004 (La. App. 2 Cir. 5/23/18), 248 So.3d 621. Such testimony alone is sufficient even where the State does not introduce medical, scientific, or physical evidence to prove the commission of the offense by the defendant. State v. Stephenson , 51,696 (La. App. 2 Cir. 11/15/17), 245 So.3d 296, writ denied , 17-2090 (La. 9/28/18), 252 So.3d 924.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of the evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is viewed, the facts established by the direct evidence and inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton , 436 So.2d 471 (La. 1983) ; Steines, supra.
Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Mingo , 51,647 (La. App. 2 Cir. 9/27/17), 244 So.3d 629, writ denied , 17-1894 (La. 6/1/18), 243 So.3d 1064. If a case rests essentially upon circumstantial evidence, that evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438 ; Mingo, supra. The appellate court reviews the evidence in the light most favorable to the prosecution and determines whether an alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. State v. Calloway , 07-2306 (La. 1/21/09), 1 So.3d 417 ; State v. Garner , 45,474 (La. App. 2 Cir. 8/18/10), 47 So.3d 584, 587, writ not considered , 12-0062 (La. 4/20/12), 85 So.3d 1256.
When the key issue is the defendant's identity as the perpetrator, rather than whether the crime was committed, the State is required to negate any reasonable probability of misidentification. State v. Weary , 03-3067 (La. 4/24/06), 931 So.2d 297, cert. denied , 549 U.S. 1062, 127 S.Ct. 682, 166 L.Ed.2d 531 (2006) ; State v. Bass , 52,014 (La. App. 2 Cir. 5/23/18), 248 So.3d 639. Positive identification by only one witness is sufficient to support a conviction. Bass, supra .
La. R.S. 14:44, Aggravated kidnapping, provides:
Aggravated kidnapping is the doing of any of the following acts with the intent thereby to force the victim, or some other person, to give up anything of apparent present or prospective value, or to grant any advantage or immunity, in order to secure a release of the person under the offender's actual or apparent control:
(1) The forcible seizing and carrying of any person from one place to another; or
(2) The enticing or persuading of any person to go from one place to another; or *622 (3) The imprisoning or forcible secreting of any person.
Whoever commits the crime of aggravated kidnapping shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.
The Louisiana Supreme Court has held that the crucial question in determining whether an aggravated kidnapping has occurred is "whether the defendant sought to obtain something of value, be it sex or money or loss of simple human dignity, by playing upon the victim's fear and hope of eventual release in order to gain compliance with his demands." State v. Arnold , 548 So.2d 920 (La. 1989) ; State v. Johnson , 50,005 (La. App. 2 Cir. 8/12/15), 175 So.3d 442, writ denied , 15-1687 (La. 9/16/16), 206 So.3d 203. Proof of intent to extort can be shown by "analyzing whether a reasonable person in the victim's position would believe that she would not be safely released unless she complied with the kidnapper's demands." Arnold, supra . In Arnold , the Louisiana Supreme Court expressly rejected the requirement that the offender "explicitly communicate" to the victim that compliance would lead to release; rather, the inquiry is whether the kidnapper intended to extort something from the victim "by playing on the victim's hope for release." Id. ; State v. Baker , 49,841 (La. App. 2 Cir. 5/20/15), 166 So.3d 1152, writ denied , 15-1219 (La. 3/4/16), 185 So.3d 745.
In the case before us, the evidence excludes every reasonable hypothesis of innocence and the State met its burden of negating any reasonable probability of misidentification. Admittedly, it would have been preferable for the authorities to have prepared a photographic lineup for Kelli to identify Mathis or for her to have made an in-court identification of Mathis as her abductor/assailant. Nonetheless, there is ample evidence identifying Mathis as the offender:
1. Sheriff Cobb and Trooper Brown, both of whom were familiar with Mathis prior to this offense, identified Mathis as the man on the surveillance video seen panning the store with a gun-shaped bulge in his pocket, following Kelli to her vehicle, and then disappearing off the screen as he entered the vehicle. Mathis is not seen again outside of the vehicle.
2. Kelli consistently testified that the same man who approached her and got into her vehicle is the one who took her phone, blue Winnsboro Bank debit card and PIN number, and then shot her.
3. Pieces of Kelli's cell phone and case were located along the route out of the cemetery that ends where Boley testified he encountered Mathis that morning. Mathis asked Boley for nine millimeter bullets.
4. McMillan testified that Mathis asked him to take Mathis to a bank so that he could "get money off" of a blue debit card that he stated his uncle had given to him. Mathis told McMillan he would have to hide his face to use the card. McMillan took Mathis to his mother's house rather than the bank.
5. A search of Mathis's mother's residence revealed clothes freshly washed and still in the washing machine-clothes matching the ones Mathis was seen wearing in the surveillance video.
6. When Officer Pearce encountered Mathis on the road, Mathis fled.
Despite the lack of forensic evidence and identification by the victim, the above evidence supports a rational factfinder's conclusion that there was no reasonable hypothesis of Mathis's innocence and that *623 there was no reasonable possibility of misidentification.
The record supports the jury's reasonable conclusion that the evidence sufficiently proved the extortion element of the offense that Mathis demanded something of value. Kelli testified that she did what Mathis told her to do so that he would not kill her. Mathis threatened Kelli by telling her he had a gun and then showing it to her while the two were riding in the car. Mathis demanded Kelli's phone and money while she was crouched on the floorboard with a gun pointed at her. Kelli's testimony established that Mathis sought something of value in preying upon Kelli's hopes that her compliance would lead to her release. Viewed in the light most favorable to the prosecution, all of the elements of the crime of aggravated kidnapping were proven beyond a reasonable doubt. For these same reasons, the trial court properly denied Mathis's motion for new trial. These assignments are without merit.
Jury Charge
Mathis argues that he suffered a deprivation of fundamental due process because the jury charge failed to include the final element of aggravated kidnapping, the extortion element, as discussed above. He argues that the jury charge must include every essential element of the crime and its deficiency in this case violated his constitutional rights. Mathis acknowledges that his counsel did not contemporaneously object to the jury charge, but argues that this Court should review the assigned error because it was not harmless. He argues that the guilty verdict was directly related to the error.
The State argues that any challenge to the jury charge was not preserved for appeal because there was no contemporaneous objection at trial. The State further asserts that if this Court reviews the jury charge, any error was harmless, as the verdict in this case was surely not attributable to the error. The State points out that the jury questioned the court about the difference between aggravated kidnapping and second degree kidnapping. When questioned by the jury, the trial court read the definitions of each crime from the criminal code and explained the differing element, i.e., the extortion element about which Mathis complains. The State argues that even if an error in the actual charge is found, the error was cured by this explanation to the jury.
A party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error. La. C. Cr. P. art. 801(C). It is well established that a defendant is limited to the grounds for objection articulated at trial and a new basis for an objection may not be raised for the first time on appeal. State v. Colby , 51,907 (La. App. 2 Cir. 5/30/18), 244 So.3d 1260 ; State v. Holder , 50,171 (La. App. 2 Cir. 12/9/15), 181 So.3d 918, writs denied , 16-0092 (La. 12/16/16), 211 So.3d 1166, 16-0056 (La. 12/16/16), 212 So. 3d 1176.
Errors in jury instructions are subject to the harmless error analysis. State v. Mosley , 51,168 (La. App. 2 Cir. 6/21/17), 223 So.3d 158. The harmless error analysis evaluates whether the guilty verdict actually rendered in the trial was surely unattributable to the error. State v. Chisolm , 49,043 (La. App. 2 Cir. 5/14/14), 139 So.3d 1091, writ denied , 14-1203 (La. 3/13/15), 176 So.3d 1031.
A jurisprudential exception to the contemporaneous objection rule exists in cases where there have been fundamentally erroneous misstatements of the essential elements of the charged offense.
*624 In such cases, the Louisiana Supreme Court has adopted the view that such fundamentally incorrect jury instructions so affect the fairness of the proceedings and the accuracy of the fact-finding process that due process of law requires reversal, even in the absence of compliance with legislative procedural mandates. "Such an error is of such importance and significance as to violate fundamental requirements of due process." State v. Williamson , 389 So.2d 1328 (La. 1980). The exceptions to Article 801's objection requirement exist in situations "where the error causes such a fundamental defect in the proceedings that the defendant is deprived of a fair trial." Id.
In Williamson, supra , the Louisiana Supreme Court found a fundamental due process violation where the judge, prosecutor, and defense counsel labored under the misconception that a prior version of the law was applicable and the jury charge reflected that mistake. Because all parties were mistaken, defense counsel failed to object to the erroneous jury charge. Under those facts, the Court explained that the error went to the very definition of the crime for which the defendant was convicted. The Court reversed the conviction and ordered the defendant be retried.
The relevant portion of the jury charge is as follows:
Aggravated kidnapping is the forcible seizing and carrying of any person from one place to another with the intent to force that person or another person to give anything of apparent, present, or prospective value.
* * *
Thus in order to convict the defendant of aggravated kidnapping you must find that the defendant forcibly seized Kelli Longoria and carried her from one place to another or the defendant imprisoned or secreted her and that the defendant did so with the specific intent to force Kelli Longoria or some other person to give up anything of apparent, present or prospective value.
The charge omitted the element of aggravated kidnapping that requires the kidnapper's demands be made "in order to secure a release of the person under the offender's actual or apparent control."
Defense counsel failed to contemporaneously object to the omission and, unless the exception to Article 801 created in Williamson, supra , applies, Mathis has waived his right to review. We find that the exception does not apply under the facts of this case. Unlike Williamson , none of the parties here labored under any misconception of the elements or definition of aggravated kidnapping. The bill of indictment, the opening remarks to the jury and, most critically, the response to the jury's question during deliberation, correctly defined the offense for the jury. The trial court specifically referenced the technical distinction between aggravated and second degree kidnapping in its response to the jury's question and ensured that the jury understood. This is not the situation contemplated by the Louisiana Supreme Court, where the defendant is denied a fair trial due to the jury's lack of knowledge of the elements of the crime based on a faulty instruction. The Mathis jury knew the elements of aggravated kidnapping, including the extortion element, and unanimously convicted him of that crime. As a result, we decline to review the issue under the contemporaneous objection rule. This assignment is without merit.
Error Patent
On the conviction for possession of a firearm by a convicted felon, the trial court failed to impose the mandatory fine of not less than $1,000, or more than $5,000. La. R.S. 14:95.1(B). Because it was imposed *625 without the mandatory fine, Mathis's sentence is illegally lenient. Louisiana C. Cr. P. art. 882(A) provides that an illegal sentence may be corrected at any time by the court that imposed the sentence or by an appellate court on review. However, this court is not required to take such action. State v. Reynolds , 49,258 (La. App. 2 Cir. 10/1/14), 149 So.3d 471. The State did not object to the error, and Mathis is not prejudiced by the trial court's failure to impose the mandatory fine. This Court need not remand the case for correction of the sentence to include such a fine. We decline to remand the case for correction of the sentence to include the fine.
CONCLUSION
For the foregoing reasons, the convictions and sentences of Kevin Q. Mathis are affirmed.
AFFIRMED.