COX, J.
This criminal appeal arises from the Fourth Judicial District Court, Ouachita Parish, Louisiana. Linzell Jones was convicted of aggravated arson and sentenced to 20 years' imprisonment at hard labor, with the first 2 years to be served without benefits. Jones now appeals his conviction *588 and sentence. For the following reasons, we affirm Jones's conviction and sentence.
FACTS
In the early morning hours of April 6, 2016, the City of Monroe Fire Department and Police Department responded to a fire at 105 Vegas Drive, the home of Tayran Jones, Jones's now ex-wife. After investigating the fire, which originated in the carport, police arrested Jones. Jones was charged by amended bill of information with aggravated arson. A sanity commission was appointed to determine Jones's mental condition at the time of the offense, as well as his present mental capacity to proceed. On March 28, 2018, based on the reports, the trial court found that Jones was competent to stand trial.[1]
Tayran testified that she married Jones in 2009, and they lived in her home at 105 Vegas Drive. Tayran stated that she acquired the house in 1989, and owned a green 1999 Nissan Quest van since at least 2006. Tayran testified that they were having marital problems at the time of the trial. She stated that Jones started drinking alcohol and would be extremely nice to her in front of others, but would become erratic behind closed doors. She testified that in 2014, she started recording Jones so he could hear how he sounded when he was drinking. On October 25, 2015, Tayran recorded one of Jones's rants, which was played for the jury. In the recording, Jones stated that he would "burn down all these s** of b****** house around all around these homes even this house right here... I'll burn this m***** f***** down."
Tayran testified that on March 9, 2016, her house flooded. She stated that around March 28, 2016, her insurer was prepared to pay her money to repair the residence and she was talking to a contractor. However, Jones was angry because he wanted her to let him do the work. She testified that as a result of the flood, she had to gut the house and many of the contents of the house and furniture were put under the carport. Tayran stated that she put books inside the van. The van was having mechanical issues, and the rear of the van was parked partially under the carport, with the van facing the street. She stated that she had removed the tags from the van because Jones started drinking and she did not want him driving it, and that made Jones angry.
Tayran testified that on the night of the fire, her seven-year-old grandson was spending the night at her house. Tayran stated that around midnight, Jones had been outside when she heard three loud "pop" sounds. She testified that she heard the first "pop" around 9:00 p.m., when she went outside looking for Jones. She stated that she discovered Jones had lit the grill in the backyard, and was burning old documents. She said she heard the second "pop" shortly after she took a picture of her grandson sleeping in a bedroom, around 11:50 p.m. She testified that she looked out the window and saw Jones near the rear of the van walking under the carport, but she did not see a fire at that time. She stated that Jones came inside the house and asked her about cucumbers, and she told him that they were on the table. She stated that Jones walked outside, but came back inside and asked about the cucumbers two more times. Tayran *589 testified that she then heard the third "pop" shortly after midnight, looked out the window, and saw a fire inside the rear section of the van.
Tayran testified that she panicked because she thought the van was going to explode. She yelled for Jones, he came walking from the back, and she told him the van was on fire. She stated that she grabbed her phone, purse, and work bag; scooped up her grandson; and ran outside to the neighbor's house. She testified that she called 911 and moved her other vehicle, which was parked near the van, to her neighbor's house. Tayran stated that she then grabbed the neighbor's water hose and started spraying water toward the van, but stopped when she heard another loud "boom." She said the fire consumed the inside of the van, and started coming up above the van. She testified that at one point, she saw Jones in the yard with a bucket, throwing water or some liquid substance at the fire. She stated that she did not see him again until the fire was out.
Cecil Jeselink, a district fire chief for the City of Monroe Fire Department, testified that when he arrived at the scene, the firefighters were already spraying water on the van and working their way toward the house through the carport area. He stated that the first responding crew ensured that everyone was out of the house. He stated that as they were working on the fire, a then-unidentified man walked into the yard from the street. He testified that the man, later identified as Jones, grabbed a fire hose, pulled on it, and hollered, "Don't put that out." Chief Jeselink stated that he told Jones to put the hose down and come over by him. He testified that Jones introduced himself as the Archbishop of Louisiana. He noted that if the windows on a car are up when the car is on fire, it will cause a loud popping sound when the windows burst.
Officer Tim Crum of the City of Monroe Police Department testified that he responded to the fire. He stated that the fire department advised him that Jones was getting too close to the scene, so he put Jones in his unit. Officer Crum testified that based on a conversation with Jones's wife, he considered Jones to be a suspect in the fire. Officer Crum stated that although he could smell a moderate odor of alcohol on Jones, Jones was able to understand him and he could understand Jones. Officer Crum testified that he advised Jones of his Miranda rights, and Jones told him that he (Jones) had been working on a lawnmower that was flipped upside down near the carport. He stated that Jones said that as he was working on the lawnmower, he lit a barbeque grill, which was under the carport, and that the fire in the grill must have ignited the gasoline from the overturned mower, which then traveled toward the van, and caught the van on fire. Officer Crum stated that he confirmed there was an overturned lawnmower and grill near the carport, but stated that there was no evidence that any fire was started in those grills. He noted that there was also a grill in the backyard, which was burning something.
David Hill, Chief Arson Investigator for the City of Monroe Fire Department, was accepted by the trial court as an expert in arson investigation, including origin and cause. Investigator Hill stated he was called to investigate the fire and determine the cause of the fire. He testified that he determined that the origin of the fire was inside the rear section of the van. In reviewing photos he took of the damage to the van, he explained that the rear seats were totally consumed, meaning that is the area that burned the longest and the hottest. Investigator Hill testified that the fire started on the rear seats with an introduced ignition source, such as a lighter, *590 match, or something with an open flame. He stated that the back passenger door on the driver's side of the van was open. He explained that it is not necessary to use an accelerant because as long as there is air and something to burn, the fire will continue to slowly grow. Investigator Hill testified that the fire burned inside the passenger compartment of the van, left the van, caught the easement of the carport on fire, and then traveled along the carport until it entered the attic of the house. He also testified that there was no evidence of an engine fire, spontaneous combustion, or a lightning strike.
Investigator Hill stated that when he talked to Jones, Jones told him that he had lit a barbeque grill that was near the van and that apparently an ember had flown over and caught the van on fire. Investigator Hill stated that although there were two grills near the carport on the passenger side of the van, one flipped upside down and one upright, there was no evidence of a recent fire having burned in either of them, so he was able to rule out those grills as a cause of the fire. He stated that there was a grill in the backyard near a storage shed, where papers were being burned, but that grill had nothing to do with the fire. Investigator Hill testified that there were several spots in the backyard that had been set on fire, and that Tayran told him that Jones was wandering around the backyard acting intoxicated, "talking out of his head," and setting fires. He stated that as part of his investigation, he reviewed the weather report for the night of the fire; there was a light wind blowing from the southeast. He explained that the house faced southeast, so any ember from the lit grill would have blown away from the van. He also testified that an open flame would have been required to start this fire, not an ember.
In response to Jones's suggestion that the fire started when a spark ignited gasoline from an overturned lawnmower, Investigator Hill stated that the driveway slopes down away from the carport toward the road, so any gasoline would not have flowed toward the van. He also explained that there was no evidence of any burns or damage to the lawnmowers nor was there any evidence that the fire started under the van. He testified that for these reasons, he concluded that the lawnmowers had nothing to do with the fire. Chief Hill stated that when he told Jones that his story could not be true, Jones became irate, told him that he was the Archbishop of Louisiana, and said that the police arrested him so they could get with his wife. Investigator Hill stated that Jones appeared to be intoxicated or on some illicit drug.
Numerous photos of the van and house were presented at trial. The photos depict the interior of the van as burned down to the metal frame, the windows and the seats gone, and all of the paint on the rear half of the van gone. The pictures show that the front exterior of the van did not sustain as much damage and the tires were intact. The pictures of the house depict the carport awning, posts, all of the contents of the house under the carport, and the exterior and interior wall of the house as damaged. There are photos of the two lawnmowers and two grills on the passenger side of the van, under and near the carport area, which do not have any fire damage. Also, the photos show, as explained by Chief Hill, that the radiant heat from the fire damaged the neighbor's house, cracking a window and damaging the vinyl siding.
On May 9, 2018, the jury unanimously found Jones guilty as charged of aggravated arson. Jones filed a pro se motion for new trial, arguing that his trial attorney *591 was ineffective in failing to establish a proper defense. The trial court denied the motion.
On August 2, 2018, the trial court sentenced Jones to 20 years' imprisonment at hard labor, with the first 2 years to be served without the benefit of parole, probation, or suspension of sentence. No motion to reconsider sentence was filed. This appeal followed.
DISCUSSION
Insufficient Evidence
Jones's first assignment of error is that there was insufficient evidence to prove that he was guilty beyond a reasonable doubt. He asserts that the case against him is entirely circumstantial as there is no testimony that he started the fire in the van. Jones argues that there is at least one reasonable hypothesis of innocence that should have precluded the jury from finding him guilty. Specifically, he claims that his mental state was compromised on the date of the fire based on his comments about being the Archbishop of Louisiana, and his wife had motive to set her own car on fire and blame him. He asserts that his wife did not receive enough insurance proceeds to cover the full extent of the damage caused by the flood, and his past statements threatening to burn down their house provided her with the opportunity to recoup her insurance losses and get rid of him.
In response, the State argues that the evidence presented at trial supports Jones's conviction. The State asserts that "Jones pretty much admitted responsibility for starting the fire," and Jones's false exculpatory statements, regarding the barbeque grill under the carport and the overturned lawnmower, directly point to Jones being the arsonist. The State claims that the suggestion that Jones's wife had anything to do with the fire is "preposterous," does not create a reasonable hypothesis of innocence, and was properly rejected by the jury.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia , 443 U.S. 307, 99 S. Ct. 2781, 61 L.Ed. 2d 560 (1979) ; State v. Tate , 01-1658 (La. 5/20/03), 851 So. 2d 921, cert. denied , 541 U.S. 905, 124 S. Ct. 1604, 158 L.Ed. 2d 248 (2004) ; State v. Steines , 51,698 (La. App. 2 Cir. 11/15/17), 245 So.3d 224, writ denied , 17-2174 (La. 10/8/18), 253 So. 3d 797. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford , 05-0477 (La. 2/22/06), 922 So. 2d 517 ; State v. Nabors , 52,163 (La. App. 2 Cir. 7/19/18), 251 So. 3d 1214, writ denied , 2018-1477 (La. 9/21/18), 252 So. 3d 496.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton , 436 So. 2d 471 (La. 1983) ; State v. Nabors, supra.
Circumstantial evidence consists of proof of collateral facts and circumstances *592 from which the existence of the main fact may be inferred according to reason and common experience. State v. Mingo , 51,647 (La. App. 2 Cir. 9/27/17), 244 So. 3d 629, writ denied , 17-1894 (La. 6/1/18), 243 So. 3d 1064. If a case rests essentially upon circumstantial evidence, that evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438 ; State v. Mingo , supra. The appellate court reviews the evidence in the light most favorable to the prosecution and determines whether an alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. State v. Calloway , 07-2306 (La. 1/21/09), 1 So. 3d 417 ; State v. Mathis , 52,500 (La. App. 2 Cir. 1/16/19), 263 So. 3d 613.
The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith , 94-3116 (La. 10/16/95), 661 So. 2d 442 ; State v. Mathis, supra. A reviewing court accords great deference to the jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Mathis, supra.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Cooley , 51,895 (La. App. 2 Cir. 5/23/18), 247 So. 3d 1159, writ denied , 2018-1160 (La. 3/6/19), 266 So.3d 899. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. Id.
La. R.S. 14:51(A) defines aggravated arson as the intentional damaging by any explosive substance or the setting fire to any structure, watercraft, or movable whereby it is foreseeable that human life might be endangered.
The evidence presented at trial is sufficient to support Jones's conviction for aggravated arson. Investigator Hill, an expert in arson investigation, testified that the fire started in the rear passenger compartment of the van with an introduced ignition source. Contrary to Jones's explanations for the fire, Investigator Hill testified that there was no evidence of a recent fire having burned in either of the grills near the carport, nor was there any evidence of any damage to the lawnmowers near the carport or that the fire started under the van. Although he was unable to determine the exact cause of the fire, Investigator Hill testified that an open flame would have been required to start the fire, not an ember, and he was able to rule out an engine fire, the weather, and spontaneous combustion as possible causes of the fire. Jones's wife testified that Jones had been outside, both in the backyard and under the carport, prior to the fire and was burning old documents in the grill in the backyard. Further, Jones had previously threatened to burn down the house. This evidence is sufficient to establish that Jones intentionally set his wife's van on fire.
Further, it was foreseeable that human life might be endangered because Jones knew that his wife and her young grandson were inside the house at the time he set the van on fire. As shown by the fact that the fire spread from the van to the carport and the house, Jones's actions posed a real and substantial danger to human life.
Although Jones suggests that his wife set the van on fire, such a hypothesis of innocence is not reasonable or supported by the evidence presented at trial. This Court does not assess the credibility of witnesses or reweigh evidence. The jury's *593 decision to reject Jones's hypothesis of innocence was reasonable and based on rational credibility and evidentiary determinations.
Considering the evidence in a light most favorable to the prosecution, the evidence was sufficient for the jury to conclude beyond a reasonable doubt, and to the exclusion of every other reasonable hypothesis of innocence, that Jones was guilty of aggravated arson. This assignment of error is without merit.
Excessive Sentence
Next, Jones argues that the trial court erred by imposing an unconstitutionally harsh and excessive sentence. He argues that his maximum 20-year sentence is excessive. Given his history of psychological and psychiatric illness, specifically paranoia, and its manifestations at the time of this incident, Jones contends that he is not the worst of offenders and the sentence imposed fails to contemplate or account for a reasonable combination of treatment, rehabilitation, and punishment.
In response, the State asserts that the trial court clearly articulated reasons for the sentence imposed, and that Jones's sentence is within the statutory limits and not excessive. The State notes that Jones has an extensive criminal history, that his criminal conduct threatened potential harm and even death to his wife and grandchild, and that the record is void of any evidence that Jones's mental health issues made him prone to commit criminal acts.
Ordinarily, appellate review of sentences for excessiveness is a two-step process, the first being an analysis of the district court's compliance with the sentencing guidelines of La. C. Cr. P. art. 894.1. However, when a defendant fails to file a motion to reconsider sentence in the lower court, appellate review is limited to the second step, an analysis of the sentence for constitutional excessiveness. State v. Mims , 619 So. 2d 1059 (La. 1993) ; State v. Lewis , 52,367 (La. App. 2 Cir. 11/14/18), 260 So. 3d 1220. See also La. C. Cr. P. art. 881.1(E), which precludes a defendant from presenting sentencing arguments to the court of appeal which were not presented to the trial court. State v. Pittman , 52,027 (La. App. 2 Cir. 4/11/18), 248 So. 3d 573.
Constitutional review turns upon whether the sentence is illegal, grossly disproportionate to the severity of the offense, or shocking to the sense of justice. State v. Lobato , 603 So. 2d 739 (La. 1992) ; State v. Lewis , supra.
A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey , 623 So. 2d 1276 (La. 1993). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver , 01-0467 (La. 1/15/02), 805 So. 2d 166 ; State v. Little , 50,776 (La. App. 2 Cir. 8/10/16), 200 So. 3d 400, writ denied , 16-1664 (La. 6/16/17), 219 So. 3d 341 ; State v. Lewis , supra.
The trial court has wide discretion in the imposition of sentences within the statutory limits, and such sentences should not be set aside as excessive in the absence of a manifest abuse of that discretion. State v. Williams , 03-3514 (La. 12/13/04), 893 So. 2d 7 ; State v. Edden , 52,288 (La. App. 2 Cir. 11/14/18), 259 So. 3d 1196, writs denied , 2018-1961 (La. 4/15/19), 2018-2063 (La. 4/15/19), 267 So. 3d 1124, 267 So. 3d 1127. A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular *594 case, and, therefore, is given broad discretion in sentencing. State v. Edden , supra. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. State v. Edden, supra.
As a general rule, maximum or near-maximum sentences are reserved for the worst offenders and the worst offenses. State v. Cozzetto , 07-2031 (La. 2/15/08), 974 So. 2d 665 ; State v. Lapoole , 51,199 (La. App. 2 Cir. 2/15/17), 215 So. 3d 430, writ denied , 2017-0618 (La. 11/28/17), 230 So.3d 220.
La. R.S. 14:51(B) provides:
Whoever commits the crime of aggravated arson shall be imprisoned at hard labor for not less than six nor more than twenty years, and shall be fined not more than twenty-five thousand dollars. Two years of such imprisonment at hard labor shall be without benefit of parole, probation, or suspension of sentence.
The trial court did not abuse its discretion in sentencing Jones to 20 years at hard labor. Because Jones failed to file a motion to reconsider sentence, review of his sentence is limited to a bare claim of constitutional excessiveness. Nevertheless, the record shows that the trial court complied with La. C. Cr. P. art. 894.1, and considered the appropriate factors in determining Jones' sentence.
In reviewing the PSI, the trial court noted that Jones is a third-felony offender. Jones's criminal history began as a juvenile in Caddo Parish, but the juvenile records are no longer available. In 1979, at the age of 17, he was arrested for aggravated assault. In 1980, Jones was arrested for simple burglary and sentenced to 2 years at hard labor, suspended, with 18 months of supervised probation, which was revoked when he was arrested for theft and unauthorized use of a movable. The trial court stated that Jones's history of misdemeanor convictions for various property crimes greatly escalated in 1982, when he was arrested for attempted first degree murder and armed robbery. The trial court noted the facts of that offense as follows: officers were dispatched to a reported shooting, and upon arrival, found the victim covered in blood. The victim told officers he was stopped at a traffic light when a black male, later identified as Jones, jumped into his vehicle, shoved a gun to his head, and ordered him to drive. After driving to a specific location, Jones ordered the victim to turn over all his money. Jones was enraged because the victim only had $ 12.00, and began to bludgeon the victim's head with an unknown object. The victim blew the vehicle's horn and Jones fled. Jones received concurrent sentences of 10 and 50 years at hard labor, respectively. He was released on parole in 2007 and was not arrested again for two years. In 2009, Jones was arrested for theft, but that charge was later dismissed. In 2014, he was arrested for DWI-first offense, and placed on misdemeanor probation. That probation was revoked as a result of the instant offense. From 2015 to 2016, Jones was arrested for theft, unauthorized use of an access card, simple burglary, and shoplifting. The trial court also noted that a parole warrant was issued for Jones on April 19, 2016, and that after he is sentenced on the instant offense, his parole will automatically be revoked.
The trial court reviewed Jones's family, education, and work history, noting that he grew up in Shreveport, Louisiana, took special education classes, never progressed past ninth grade, and attended school at the Louisiana Training Institute ("LTI"). The trial court noted that before his incarceration for attempted murder and armed robbery, Jones's work history was sporadic.
*595 After his release on parole, he requested a transfer of his supervision from Shreveport to Monroe, Louisiana, where his girlfriend, the victim in this case, resided. They were later married, and during that time, Jones held jobs loading trucks, doing landscaping work, and working as a delivery driver. In addition, the trial court stated that Jones has learning difficulties and health problems, as a result of a football injury at LTI and sniffing gasoline, fingernail polish, and glue as a youth. The trial court noted that Jones suffered a drug overdose in 1975, and he reported regular marijuana use.
The trial court noted that Jones did not make a statement for the PSI, and only claimed that he was being set up. The victim provided a written statement, outlining the intensifying threats made by Jones against her and her family. The trial court noted that the victim, who has now divorced Jones, is understandably fearful of Jones and what he might do if given an opportunity to carry out his threats, and that she is not seeking restitution because her insurer reimbursed her for damage to the vehicle and repairs to her home.
Pursuant to La. C. Cr. P. art. 894.1, the trial court found that there was an undue risk that Jones would reoffend if given a suspended or probated sentence, that he was in need of correctional treatment, and that a lesser sentence would deprecate the seriousness of his crime. As an aggravating factor, the trial court stated that Jones knowingly created a risk of death or great bodily harm to more than one person by setting fire to a vehicle under a carport, noting that the fire spread to the carport and could have extended throughout the residence, with the victim and her grandson inside the house. The trial court found that there were no applicable mitigating factors. Further, the trial court specifically found that a maximum sentence was warranted in this case, noting that Jones threatened the victim with physical harm for years, he created a risk of serious injury to her and her grandson, and Jones is a third-felony offender with a history of violence and other offenses spanning his entire adult life.
Jones's maximum 20-year sentence is not constitutionally excessive. After months of threatening the victim and her family, Jones set the victim's van, which was partially parked under the carport, on fire, while the victim and her young grandson were in the house. The record supports the sentence imposed. Considering the facts of this case and Jones's lengthy criminal history, the sentence imposed by the trial court does not shock the sense of justice, nor is it grossly disproportionate to the severity of the offense. This assignment of error is without merit.
CONCLUSION
For the foregoing reasons, Linzell Jones's conviction and sentence are affirmed.
AFFIRMED.

Three doctors were appointed to examine Jones: Dr. Mark Vigen, Dr. Phillip Scurria, and Dr. James Pinkston. Dr. Scurria and Dr. Pinkston agreed that Jones was competent to stand trial and that he knew right from wrong at the time of the offense. However, Dr. Vigen disagreed and found that Jones was not competent to proceed based on his "ongoing delusional ideation that his wife and her sons are attempting to kill and/or incarcerate him."